Melinda C. FRANK, Plaintiff,

v.

Howard R. RELIN, Individually and in his official capacity as the Monroe County District Attorney, Defendant.

No. 86–CV–0371L.

United States District Court,
W.D. New York.

May 2, 1994.

David Rothenberg, Rochester, NY, for plaintiff.

William G. Gandy, Rochester, NY, for defendant.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Melinda C. Frank, commenced this action pursuant to 42 U.S.C. § 1983 against her former employer, Howard R. Relin, Monroe County District Attorney. Plaintiff alleged that she was terminated from her position as Victim Witness Coordinator in retaliation for exercising her First Amendment right to speak on matters of public concern. The matter was tried to a jury and the jury determined that plaintiff's speech was a substantial or motivating factor in defendant's decision to terminate her. The jury awarded back pay in the sum of $142,-170.00.

In light of the jury verdict, there are several remaining issues that must be decided by the Court. These issues include:

(1) Whether, in light of the jury's factual determination, Relin is entitled to qualified immunity in his individual capacity;

(2) Whether plaintiff is entitled to an award of prejudgment interest on the back pay award made by the jury; and,

(3) Whether the Court should order plaintiff reinstated to her former position or, in lieu thereof, enter an award of front pay.

## DISCUSSION

### I. Qualified Immunity

"The affirmative defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bieluch v. Sullivan*, 999 F.2d 666, 670 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 926, 127 L.Ed.2d 219 (1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). *See also Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir.1991); *P.C. v. McLaughlin*, 913 F.2d 1033, 1039 (2d Cir.1990); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 586 (2d Cir.1990), *cert.*

*denied,* 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991).

"The threshold issue is whether the relevant law was clearly established at the time the alleged violation occurred." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir. 1991) (citing *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738). *See also Ying Jing Gan v. City of N.Y.,* 996 F.2d 522, 531 (2d Cir.1993). The Second Circuit has already determined that plaintiff's First Amendment right to speak on matters of public concern was clearly established prior to 1985, the year that plaintiff was terminated. *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 604, 126 L.Ed.2d 569 (1994).

The remaining issue is whether it was objectively reasonable for defendant to believe that his acts did not violate plaintiff's rights. *Kaminsky,* 929 F.2d at 925; *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir. 1990); *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). The Second Circuit, in *Frank,* stated that defendant's reasons for terminating plaintiff affected the qualified immunity defense. *Frank,* 1 F.3d at 1329. By its verdict, the jury determined that a motivating factor in defendant's decision to terminate Frank was her protected speech.

In light of this factual determination, I find that it was not objectively reasonable for defendant, the Monroe County District Attorney and an attorney, to believe that his termination of plaintiff did not violate her First Amendment rights. Therefore, defendant is not entitled to the defense of qualified immunity as to the claim against him in his individual capacity.

## II. Prejudgment Interest

Plaintiff claims that she is entitled to compounded, prejudgment interest on the sums awarded by the jury as back pay. Although recognizing that prejudgment awards are often made in employment discrimination cases, defendant contends that no award should be made in this case.

■ Defendant's challenge to an entry of prejudgment interest is quite narrow. Defendant contends that because the issue of back pay was submitted to the jury, plaintiff should have also submitted the matter of prejudgment interest to the jury. Having failed to request prejudgment interest from the jury, defendant contends that plaintiff has waived any claim for prejudgment interest from the Court.

Federal statutes that provide remedies for discrimination and other matters often do not specifically address whether or not prejudgment interest should be awarded to a prevailing plaintiff. Nevertheless, the Supreme Court and other federal courts recognize that under certain conditions prejudgment interest may be awarded in favor of a prevailing plaintiff. *Loeffler v. Frank,* 486 U.S. 549, 557–58, 108 S.Ct. 1965, 1970, 100 L.Ed.2d 549 (1988); *Saulpaugh v. Monroe Community Hospital,* 4 F.3d 134, 145 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Clarke v. Frank,* 960 F.2d 1146, 1153–54 (2d Cir.1992).

The Second Circuit has repeatedly acknowledged a district court's discretion to award prejudgment interest. *Mendez v. Teachers Ins. & Annuity Ass'n & College Retirement Equities Fund,* 982 F.2d 783, 790 (2d Cir.1992); *Rolf v. Blyth, Eastman Dillon & Co.,* 637 F.2d 77, 86 (2d Cir.1980).

The Second Circuit has also recognized that prejudgment interest is appropriate on an award of back pay entered by the court in an action commenced under 42 U.S.C. § 1983. *Miner v. City of Glens Falls,* 999 F.2d 655, 662 (2d Cir.1993).

Interest on back pay awards for those who have been terminated because of discrimination are routine. Although Title VII does not specifically provide for prejudgment interest, the Supreme Court and the Second Circuit have recognized that that statute authorizes the granting of prejudgment interest on a back pay award. *See Loeffler,* 486 U.S. at 557–58, 108 S.Ct. at 1970–71; *Saulpaugh,* 4 F.3d at 145. In fact, it is ordinarily an abuse of discretion *not* to include prejudgment interest in a back pay award. *Saulpaugh,* 4 F.3d at 145 (citing, *Clarke,* 960 F.2d at 1146). Of course, until recently, all Title VII cases were tried to the Court.

Under the circumstances of this case, I believe that there is ample authority for the Court to enter prejudgment interest to properly redress the economic injury suffered by Frank, notwithstanding the fact that this case was tried to a jury and that the jury made no finding on interest.

Although there is older Second Circuit authority to the contrary,[1] as well as contrary First Circuit authority,[2] I believe the recent Second Circuit case of *Wickham Contracting Co. v. Local Union No. 3, Int'l Bhd. of Electrical Workers*, 955 F.2d 831 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 394, 121 L.Ed.2d 302 (1992), and a recent district court case decided in this Circuit, provide ample authority for the Court to award prejudgment interest after the jury has determined the back pay award.

In *Wickham Contracting*, the Second Circuit discussed at length the circumstances under which prejudgment interest was appropriate. Damages were awarded by the jury under § 303(b) of the Labor Management Relations Act. The matter concerning prejudgment interest was not submitted to the jury but the district court, after return of the jury verdict, nonetheless awarded an amount of prejudgment interest which was affirmed in a lengthy decision by the Second Circuit. The Second Circuit held that "[i]t was not an abuse of discretion for the district court to determine that prejudgment interest was necessary to compensate [the plaintiff] fairly under the circumstances ..." 955 F.2d at 837.

Therefore, *Wickham Contracting* acknowledged that an award of prejudgment interest was within the sound discretion of the district court judge in the absence of a statutory directive and irrespective of whether the case was tried before a jury. *See also Bingham v. Zolt*, 810 F.Supp. 100, 101 (S.D.N.Y.1993) (district court judge considering an award of prejudgment interest on a jury award under the Racketeer Influenced and Corrupt Organizations Act).

Judge William M. Skretny, a member of this Court, squarely faced this same issue concerning prejudgment interest in a case decided after *Wickham Contracting*. In *River Oaks Marine, Inc. v. Town of Grand Island*, 1992 WL 373533 (W.D.N.Y. Nov. 24, 1992), Judge Skretny awarded prejudgment interest on a jury award in a civil rights action brought pursuant to 42 U.S.C. § 1983. In an exhaustive and carefully crafted decision, Judge Skretny discussed the issue now before the Court. I find his reasoning persuasive.

First of all, I agree that prior Second Circuit law, has effectively been superseded and overruled by the recent *Wickham Contracting* case. In spite of the earlier Second Circuit authority, and some First Circuit authority to the contrary, I agree with Judge Skretny that the proper course is "to follow the weight of the Second Circuit decisions which favor such an award as in the discretion of the district court and awardable by a district court judge." *River Oaks Marine*, 1992 WL 373533, *5. Judge Skretny cites several cases in various contexts where district courts have awarded prejudgment interest *after* a jury verdict. *Id.* Those courts were not deterred from entering an award of prejudgment interest simply because the jury had initially determined issues of liability and compensatory damages.

Therefore, the fact that plaintiff did not request prejudgment interest from the jury, does not preclude me from exercising my discretion to award prejudgment interest. Among the factors to consider when determining if there should be an award of prejudgment interest are: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Wickham Contracting*, 955 F.2d at 834 (citations omitted).

**1.** *Hertz v. Graham*, 292 F.2d 443 (2d Cir.), *cert. denied*, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961); *Newburgh Land & Dock Co. v. Texas Co.*, 227 F.2d 732 (2d Cir.1955).

**2.** *Cordero v. De Jesus–Mendez*, 922 F.2d 11, 13 (1st Cir.1990); *Segal v. Gilbert Color Systems, Inc.*, 746 F.2d 78, 83 (1st Cir.1984); *Kolb v. Goldring, Inc.*, 694 F.2d 869, 875 (1st Cir.1982).

Based on a consideration of these factors, I find that prejudgment interest is warranted in this action. Plaintiff was deprived of money that she otherwise would have earned but for defendant's violation of her First Amendment rights.

Plaintiff is entitled to prejudgment interest here for the same reasons others who have been terminated on account of discrimination have been awarded prejudgment interest. *See Saulpaugh,* 4 F.3d at 145. Plaintiff has been without her lost pay for several years because of the discriminatory acts of defendant. The purpose of back pay is to make her whole and that can only be accomplished if she receives compounded, prejudgment interest. An award of prejudgment interest is necessary to fully compensate plaintiff, is not inequitable and would not create a windfall for plaintiff.

The jury awarded plaintiff $142,170.00 back pay to cover her pay loss after the improper firing from 1986 to 1993. Plaintiff requests interest, compounded annually at a rate of 7.22% per year, for a total of $46,-292.97 and $37.80 per day from the date of the jury verdict until the date of entry of judgment. Defendant has not challenged the calculations or the rate of interest.

■ In general, district courts have discretion in deciding what interest rate to use in awarding prejudgment interest. *Cefali v. Buffalo Brass Co.,* 748 F.Supp. 1011, 1025 (W.D.N.Y.1990). The Second Circuit has not expressly endorsed any particular prejudgment interest rate. *Id.* Courts in this and other circuits have used various interest rates including the postjudgment interest rate provided in 28 U.S.C. § 1961(a) [the treasury bill rate], statutory interest rates, or market rates. *See Katsaros v. Cody,* 744 F.2d 270, 281 (2d Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984) (using the rate of prime plus one percent); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1219–20 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981) (using the Missouri statutory rate); *Foltz v. U.S. News & World Report Inc.,* 613 F.Supp. 634, 648–49 (D.C.D.C.1985) (using the District of Columbia statutory rate); *River Oaks Marine,* 1992 WL 373533 at *7 (using the adjusted prime rate); *Cefali,* 748 F.Supp. at 1025 (using the postjudgment rate).

■ Plaintiff suggests that the Court use 7.22% as the prejudgment interest rate based solely on the fact that the Second Circuit in· *Saulpaugh* used that rate in discussing whether or not straight interest or compound interest was required. 4 F.3d at 145. In *Saulpaugh,* the Second Circuit was not, as suggested by plaintiff, endorsing the use of 7.22% as the prejudgment interest rate on back pay awards. The Second Circuit did not offer any explanation as to the source of this interest rate and was merely using that figure to demonstrate the result of compounding the interest. The Second Circuit did not calculate the interest but remanded the case to the District Court.

I decline to award prejudgment interest at the 7.22% rate, without further clarification of its source, and instead award prejudgment interest at the postjudgment, treasury bill rate, provided in 28 U.S.C. § 1961(a), which is now 4.5%. Plaintiff is, therefore, entitled to an award of prejudgment interest in the amount of $31,438.00 on her back pay award of $142,170.00 as of May 2, 1994.

## III. Reinstatement

■ After a jury finds § 1983 liability in a loss-of-employment case, the Court must attempt to make plaintiff whole, while avoiding granting plaintiff a windfall. *Stanley v. Chilhowee R–IV School Dist.,* 5 F.3d 319, 322 (8th Cir.1993). Reinstatement of plaintiff to her former position is an available remedy under § 1983 and is appropriate when plaintiff has been denied a right to continued employment. *Petrella v. Siegel,* 843 F.2d 87, 89 (2d Cir.1988).

■ Reinstatement is an equitable remedy which is to be exercised in the discretion of the district court. *Versarge v. Township of Clinton N.J.,* 984 F.2d 1359, 1368 (3d Cir. 1993); *Williams v. Roberts,* 904 F.2d 634, 639 (11th Cir.1990); *Rosario–Torres v. Hernandez–Colón,* 889 F.2d 314, 321 (1st Cir. 1989).

While some courts view reinstatement in § 1983 cases as a presumptive remedy, *see e.g., Williams,* 904 F.2d at 639 (plaintiff discriminated against in an employment context is "normally entitled to reinstatement and back pay, absent special circumstances"), *Allen v. Autauga County Bd. of Educ.,* 685 F.2d 1302, 1305 (11th Cir.1982) (reinstatement required "except in extraordinary cases") and *Jackson v. City of Albuquerque,* 890 F.2d 225, 233 (10th Cir.1989) (reinstatement "is ordinarily to be granted"), others view reinstatement as an appropriate remedy only after the court has weighed and balanced the equities of a given case. *Rosario–Torres,* 889 F.2d at 322; *Banks v. Burkich,* 788 F.2d 1161, 1164 (6th Cir.1986) ("An unconstitutionally discharged employee does not have an absolute right to reinstatement").

■ Regardless of how the remedy is viewed, however, because of the equitable nature of reinstatement, a court must consider, in the exercise of its discretion, whether reinstatement is appropriate in light of all the surrounding circumstances. The Court must weigh and balance all of the equities and circumstances in an attempt to determine if reinstatement is the appropriate remedy for that particular case.

In weighing and balancing the equities in an attempt to determine if reinstatement is an appropriate remedy, *Rosario–Torres* instructs the district court to consider the following:

[R]einstatement in unlawful-discharge cases often will place some burden on the [governmental] agency: there will likely be tension (even hostility) between the parties when forcibly reunited; employees who have assumed duties previously performed by the fired worker will have to be displaced when he or she returns; and as a result the public's business may be conducted somewhat less efficaciously.

*Rosario–Torres,* 889 F.2d at 322.

■ Although "routine incidental burdens," without more should not normally preclude reinstatement, *Rosario–Torres,* 889

F.2d at 322, courts have denied reinstatement based on some of these incidental burdens, for example, animosity between the parties. *See Versarge,* 984 F.2d at 1368 (quoting *Robinson v. Southeastern Pa. Transp. Auth.,* 982 F.2d 892, 899 (3d Cir. 1993). In this case, the proof established that plaintiff was a valued and trusted employee who was very dedicated to her job in the Monroe County District Attorney's Office. But for the incident which caused defendant to summarily terminate her, it is clear that plaintiff would have continued in her position indefinitely. Plaintiff requests reinstatement, and there is no reason to believe that she would not be unable to perform as she had in the past. In addition, plaintiff has been unable to find a comparable job and she has consistently earned much less money than she would have earned in her prior position in the District Attorney's office. All of these factors suggest that the Court should consider reinstatement.

On the other hand, the position of Victim Witness Coordinator has been filled by the same person continuously since plaintiff was terminated in 1985. If plaintiff were reinstated, her replacement, an individual who was not involved in defendant's decision to terminate plaintiff, would become an innocent victim.

Defendant must operate his office within budgetary constraints imposed by others. The Monroe County Legislature has authorized only one position for Victim Witness Coordinator, and defendant could not, *sua sponte,* pay two employees to fill the one position. Therefore, it appears that if plaintiff were reinstated at her former pay level, her replacement, or someone else, would have to be fired.

In addition, the position of Victim Witness Coordinator has been changed.[3] Although I am convinced that plaintiff could perform all of the tasks required, the fact that the position has undergone some change is a consideration to be weighed when determining whether reinstatement is an appropriate remedy.

---

**3.** The duties of Victim Witness Coordinator were modified to some degree in 1989 and the incumbent is now described as the Director, Victim Witness and Community Services.

Furthermore, when plaintiff was fired, she was technically listed as a provisional employee and did not have Civil Service protection. Plaintiff might well now have to comply with Civil Service requirements if she were reinstated. Since defendant could choose among eligible candidates, the likelihood of plaintiff's appointment, assuming she met Civil Service requirements, is virtually nil in light of defendant's prior actions against plaintiff.

Finally, although some of the employees with whom plaintiff worked have left the office, a substantial number remain, including the defendant who continues in his position as Monroe County District Attorney. This case has generated a fair amount of publicity, and there are obviously strong feelings between the parties as a result of this case. Plaintiff's former position in the Monroe County District Attorney's Office was a sensitive one requiring that she work very closely with Assistant District Attorneys in the prosecution of criminal actions in Monroe County. Although I assume that professionals would be able to overcome initial feelings of animosity, there is certainly a potential that such feelings could diminish plaintiff's effectiveness. If this were the only problem, it would not deter my reinstating plaintiff, but I believe this potential animosity, together with the other reasons that I have discussed, makes reinstatement inappropriate.

It is true that plaintiff was awarded a substantial amount in compensatory damages, and in some case that fact alone has convinced courts not to order reinstatement. *See Stanley,* 5 F.3d at 322. In my view, however, compensatory damages for lost back pay are *not* sufficient to remedy the harm done to plaintiff.

Although the matter is troubling, I believe that reinstatement is not the appropriate equitable remedy in this case. Plaintiff's reinstatement under the circumstances that exist in the Monroe County District Attorney's Office would be inappropriate and possibly ineffectual. I believe that the appropriate remedy is to award plaintiff a sum of front pay to compensate her for her wrongful termination.

Therefore, plaintiff's request for reinstatement is denied.

## IV. Front Pay

The Court has broad discretion to remedy the financial harm suffered by a plaintiff as a result of a wrongful termination in violation of her constitutional rights. Although the jury awarded damages for loss of pay up to the trial, that award, plus interest, does not fully rectify the harm suffered by plaintiff. Although plaintiff has been vindicated, in one sense, by the jury's verdict, she continues to suffer as a result of her firing. She lost her job and is now making approximately $16,700.00 less per year with the Rochester Housing Authority.

Although I have determined that reinstatement is impracticable, that should not end the inquiry concerning a remedy for the established violation of plaintiff's constitutional rights.

A district court is given broad discretion to determine a remedy and one of those possible remedies includes an award of front pay. *Barbano v. Madison County,* 922 F.2d 139, 146 (2d Cir.1990) (citing, *Carrero v. New York City Housing Auth.,* 890 F.2d 569, 579 (2d Cir.1989)).

Front pay may not be an appropriate remedy in all situations, but under particular circumstances it may be appropriate when reinstatement is either impossible or impracticable. *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728 (2d Cir.1984). *See also Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,* 604 F.Supp. 962, 966 (E.D.Pa. 1985) ("front pay appropriate in situations where a court determines that reinstatement is an inadequate remedy").

While an award of front pay "carries with it some risk of uncertainty and may, indeed, be speculative in some cases," *Whittlesey,* 742 F.2d at 728, front pay may properly be awarded where the calculation of plaintiff's likely mitigated earnings and the income she would have earned, but for her unlawful termination, do not involve "undue speculation". *Bonura v. Chase Manhattan Bank, N.A.,* 629 F.Supp. 353, 362–63 n. 3 (S.D.N.Y.1986).

The evidence at trial was that plaintiff is employed with the Rochester Housing Authority and in 1993 earned $16,744.00 less than what she would have earned in 1993 had she remained in her position in the District Attorney's Office. Plaintiff seeks an award of front pay for a period commencing from the date of the jury verdict and continuing for twenty years, her work expectancy.

■ Defendant maintains that when plaintiff was fired she was classified as a provisional employee pursuant to N.Y.Civ. Serv.Law § 65. As a result, defendant maintains that plaintiff would have been required to take a civil service exam and receive one of the top three scores in order to continue in her prior position. According to defendant, it is unduly speculative to assume that plaintiff would have taken the exam and have scored high enough to be considered for the position. Therefore, defendant argues, plaintiff should not receive any front pay award.

Of course, there is an element of speculation whenever a court tries to fashion a remedy, after the fact, to place the aggrieved employee back where she would have been but for the wrongful act of the defendant. But lack of certainty should not deter the Court from fashioning a remedy for one whose constitutional rights have been violated. To do otherwise would allow the defendant to benefit from the chaos that he created.

"[D]efendant will not be heard to complain of uncertainty when that uncertainty has been caused by its own acts." *Buckley v. Reynolds Metals Co.*, 690 F.Supp. 211, 216 (S.D.N.Y.1988) (citing *Koyen v. Consolidated Edison Co. of N.Y., Inc.*, 560 F.Supp. 1161, 1169 (S.D.N.Y.1983) ("the wrongdoer shall bear the risk of the uncertainty which his own wrong has created")).

Plaintiff's status with the District Attorney's Office prior to her firing was not as tenuous as defendant now suggests. The testimony at trial established that plaintiff was an excellent employee who took great pride in her job and made exceptional efforts to fulfill all of her responsibilities. Prior to her firing, all those who worked with her praised her performance. Through an error, she was allowed to work as a "provisional employee" for several years, contrary to Civil Service Law. That fact, however, should not preclude relief from this Court. The Court's purpose is to fashion a remedy for one whose constitutional rights have been violated. It is certainly possible that had plaintiff not been fired, someone might have discovered the fact that she had not taken a civil service exam, forced her to take it and terminated her if she did not pass the exam or failed to finish in one of the top three positions. Anything is possible, but that scenario is certainly not probable in light of plaintiff's past performance and in light of the steps taken to circumvent the civil service test results when Frank's replacement scored very low on her exam.

At the hearing, concerning remedies, it was demonstrated quite clearly that although plaintiff's replacement failed to finish in the top three, and therefore could not have been selected for the position, extraordinary steps were taken to redefine the position and its requirements, virtually guaranteeing that plaintiff's replacement would continue in place. Obviously the defendant and his staff believed that plaintiff's replacement was qualified and should continue in place. It is rank speculation to suggest that if plaintiff were in the same situation, that similar accommodations would not have been made for her in light of the glowing reviews that she had consistently received during her tenure at the District Attorney's Office.

■ Under all the circumstances, I do not believe that plaintiff can be made whole merely by an award of back pay plus interest. Since reinstatement, in my view, is not practicable, I believe that an award of front pay must be made to remedy the constitutional violation. The purpose of front pay is to make victims of employment discrimination whole and to compensate them for the continuing future effects of the unlawful discrimination. *Pitre v. Western Elec. Co.*, 843 F.2d 1262, 1278 (10th Cir.1988); *White v. Carolina Paperboard Corp.*, 564 F.2d 1073, 1091 (4th Cir.1977). In this case, Frank continues to suffer economically from her wrongful termination.

The Court should consider the length of time that the front pay award is designed to cover. Plaintiff requests that she receive front pay consistent with her remaining work expectancy, twenty years. I believe, however, that an award of that duration is speculative, unwarranted and excessive.

Front pay awards vary greatly. This is to be expected because a court must consider the particular facts and circumstances of the case in making an award. Rarely will the circumstances of one case be similar to another one.

Some courts have fashioned an award to cover the time it takes the employee to secure comparable employment. *Alston v. Blue Cross & Blue Shield of Greater N.Y.*, 1985 WL 2469, *7 (E.D.N.Y. May 23, 1985); *Toth v. American Greetings Corp.*, 1985 WL 6145, *9 (N.D.Ohio Mar. 28, 1985); *Goss v. Exxon Office Systems Co.*, 1983 WL 612, *11 (E.D.Pa. July 1, 1983), *aff'd*, 747 F.2d 885 (3d Cir.1984).

Other courts have fashioned an award to cover the time it would take to make up the difference in salary between the former position and the new one. *See Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945, 956 n. 3 (10th Cir.1980) (front pay awarded for five years to reflect the amount of time that it would take for plaintiff to reach the current salary of the position from which she was terminated given historic increases in her current salary); *Reeder–Baker v. Lincoln Nat'l Corp.*, 649 F.Supp. 647, 663 (N.D.Ind. 1986), *aff'd*, 834 F.2d 1373 (7th Cir.1987) (front pay awarded for two years to reflect the difference between plaintiff's current salary and the salary she would have received at her old job assuming an increase for a commendable rating).

It appears that the salary for the Victim Witness Coordinator increased at a rate of approximately 5% per year so that at the time of trial Frank would have been paid approximately $43,162.00. (Plaintiff's Trial Ex. 20).

At the present time, Frank is employed at the Rochester Housing Authority at a salary of $26,418.00. Therefore, at the present time she is making $16,744.00 less than she would be making if she had continued in her position with the District Attorney's Office.

The job in the District Attorney's Office was unique and, in my view, in light of plaintiff's age and experience and the job market in Monroe County, it is unlikely that she will be able to duplicate the position that she had in the Monroe County District Attorney's Office. Frank will not be able to find a similar job.

It is to be expected that Frank will continue to seek employment at the highest possible salary level. She is a single-parent supporting a child, and it is not likely in the near future that she will choose not to work. In light of all the circumstances, it is not likely that Frank will readily be able to obtain another job that pays what she would have made had she continued with the Monroe County District Attorney's Office. There is no evidence that Frank has failed to take steps to seek comparable employment; the evidence has established that Frank did the best she could under the circumstances. Therefore, for the next several years she will continue to suffer economically because of her termination.

In 1994, the difference between the salary for her position in the District Attorney's Office and her salary at the Rochester Housing Authority, assuming historical rates of increases at both positions, is $16,789.00.[4] If Frank continues in her present employment at the Rochester Housing Authority, and if she continues to receive an annual increase of about 8% (which is probably overly optimistic), it will take Frank about seven years to equal the pay (about $45,000.00) that she would have been making at the District Attorney's Office had she not been terminated.

This calculation is a reasonable means to rectify the harm done to Frank. *See Fitzgerald v. Sirloin Stockade*, 624 F.2d at 956 n. 3. This lump sum payment will in effect

---

**4.** The evidence at trial indicated that Frank's salary as the Victim Witness Coordinator would have increased about 5% per year from 1986 to 1993. *See* Plaintiff's Trial Exhibit 20. The fig-

ures are not quite as precise concerning the increase in pay at the Rochester Housing Authority. Frank's salary increased about 8% from 1992 to 1993.

subsidize Frank's salary, in her present position, over the next seven years, until she reaches the salary level in her new position that she would now be making had she not been. fired. The gross difference in salary over that seven year period, assuming the historical rate of increase of 5% in the District Attorney's Office, is $114,422.00. That amount must be reduced to present value.

The present value of $114,422.00 at the current postjudgment treasury bill rate of 4.5% is $97,000.00. Plaintiff is, therefore, entitled to an award of front pay in the amount of $97,000.00.

## CONCLUSION

Defendant's assertion of the defense of qualified immunity is rejected and his motion to vacate the jury verdict based on that defense is denied.

Plaintiff's motion for prejudgment interest on the jury's award of back pay is granted and plaintiff is awarded the sum of $31,-438.00.

Plaintiff's motion for reinstatement to her former position is denied.

Plaintiff's motion for an award of front pay in lieu of reinstatement is granted. Plaintiff is awarded a lump sum payment of $97,-000.00 as front pay.

The Clerk is directed to enter judgment against defendant in the total amount of $270,608.00, which includes:

(1) compensatory damages awarded by the jury for back pay in the amount of $142,-170.00,

(2) prejudgment interest in the amount of $31,438.00, and

(3) an award of front pay in the amount of $97,000.00.

IT IS SO ORDERED.