IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 4, 1999 Session

## RHONDA LOWRIMORE v. CERTIFIED INDUSTRIES, INC.

**Appeal from the Circuit Court for Lewis County**
**No. 3268-II     Donald P. Harris, Judge**

---

**No. M1998-00938-COA-R3-CV - Filed July 19, 2001**

---

This appeal involves an award of front pay damages in a retaliatory discharge case. An employee who had been injured on the job five times in less than two years filed a retaliatory discharge suit in the Circuit Court for Lewis County alleging that her employer had discharged her in retaliation for her workers' compensation claims. A jury awarded the employee $10,390 in back pay and $20,000 in punitive damages. Thereafter, the trial court determined that reinstatement was not feasible and awarded the employee an additional $36,327 in front pay. On this appeal, the employer challenges the front pay award on two grounds. First, it asserts that the employee was not entitled to front pay. Second, it asserts that if the employee is entitled to front pay, the amount of front pay awarded by the trial court is too high. We have determined that the trial court correctly determined that the employee is entitled to front pay. However, we have also determined that front pay award must be reduced to $25,429 because of an error in the trial court's computations.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed As
Modified**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

David D. Peluso, Hohenwald, Tennessee, for the appellant, Certified Industries, Inc.

Ben Boston and Christopher V. Sockwell, Lawrenceburg, Tennessee, for the appellee, Rhonda Lowrimore.

### OPINION

Certified Industries, Inc. is a closely held Tennessee corporation whose sole shareholder, Jean Kurty, is the company president. Certified Industries uses a plastic mold process to make zinc and aluminum prototype castings for equipment parts. The company operates in a niche market as one of the nation's leading producers of prototype and short run production simulated diecastings. Certified Industries's customers include such large businesses as Caterpillar, Delco-Remy, and

Maytag Appliances. In the mid-1990's the company employed anywhere from seventy-five to one hundred employees at its plant in Hohenwald.

Rhonda Lowrimore, a 40-year-old divorceé with a GED, went to work for Certified Industries as a metal finisher in February 1994. Soon after she started working at Certified Industries, Ms. Lowrimore began to have a series of work-related injuries around the plant. First, she got a small piece of metal in her eye. Then she was struck in the ankle by a part she was working on. Then she strained her shoulder and arm using a hand-held grinder. In July 1995, she slipped and fell in the plant. Finally, in September 1995, she lodged a small piece of metal in her finger. Several of these injuries required her to seek medical attention. The most serious injury, her shoulder and arm strain, required her to remain under a doctor's care for a brief period. Each of these injuries were covered by workers' compensation.

Ms. Lowrimore's injuries were typical of those occasionally suffered by other workers at the Certified Industries plant. Nonetheless, Certified Industries was extremely concerned about Ms. Lowrimore's workers' compensation claims because it had experienced difficulty keeping its workers' compensation coverage in force. In fact, the company's workers' compensation insurance had actually lapsed on several occasions. The plant's bookkeeper characterized workers' compensation claims as a "pretty sensitive subject" with Ms. Kurty and conceded that Ms. Kurty would "get mad every time somebody would get hurt, and then I would be the one that would have to listen to all of her screaming."

Sometime in early October 1995, Ms. Kurty decided to terminate Ms. Lowrimore because of her workers' compensation claims. In a handwritten note to the file memorializing her decision, Ms. Kurty wrote, "Lay her [Ms. Lowrimore] off. . . . She is harming our insurance claims. . . . We do not have a job suitable for her. Our insurance is going up unnecessarily." On October 11, 1995, Certified Industries gave Ms. Lowrimore a termination notice stating, "Only working here one week she injured herself. Since that time she has injured herself four more times. . . . For future insurance concerns for the [c]ompany and the future safety of Rhonda we feel it would be . . . best . . . that Rhonda's employment with Certified Industries Corp. be terminated."

Ms. Lowrimore complained to the plant manager about her termination, but to no avail. She applied for and received unemployment benefits. She also spent several months looking for work. Finally, in 1996, she found a job as a nurse's assistant at a nursing home in Hohenwald. Her salary as a nurse's assistant was less than her salary with Certified Industries.

Ms. Lowrimore retained counsel and, in May 1996, filed a retaliatory discharge suit against Certified Industries in the Circuit Court for Lewis County. She asserted that she had been fired solely because she had sought and obtained workers' compensation benefits and requested both compensatory and punitive damages. The case was tried to a jury in January 1998. The jury determined that Certified Industries had fired Ms. Lowrimore in retaliation for her filing workers' compensation claims and awarded her $10,390 in back pay and $20,000 in punitive damages. Thereafter, the trial court determined that it would not be practicable to reinstate Ms. Lowrimore at Certified Industries and awarded her $36,327 in front pay in lieu of reinstatement. The trial court thereafter denied Certified Industries's motion for a new trial.

# I.
## STANDARD OF REVIEW

Certified Industries takes issue only with the trial court's award of front pay. First, it asserts that Ms. Lowrimore did not prove she was entitled to front pay and that the trial court was simply punishing the company by awarding front pay. Second, it argues that even if Ms. Lowrimore is entitled to front pay, the amount of front pay awarded by the trial court is too high. Where Certified Industries is arguing a point of law – that front pay cannot be awarded simply to punish an employer – we review the trial court's decision de novo without a presumption of correctness. *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Coldwell Banker-Hoffman Burke v. KRA Holdings*, 42 S.W.3d 868, 873-74 (Tenn. Ct. App. 2000). Where Certified Industries is making fact-based arguments that the amount of the front pay award is too high, we review the trial court's decision using the standard set out in Tenn. R. App. P. 13(d). Thus, we will presume that the trial court's factual findings are correct unless the evidence preponderates otherwise. *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000); *Stokes v. Arnold*, 27 S.W.3d 516, 522 (Tenn. Ct. App. 2000).

# II.
## THE COMPENSATORY NATURE OF THE FRONT PAY AWARD

We take up first Certified Industries's assertion that Ms. Lowrimore was not entitled to front pay and that the trial court awarded her front pay simply to punish the company. We need not tarry long with this argument because it is based on an insupportable interpretation of the trial court's explanation of its reasons for awarding front pay.

An award of front pay is designed to make a wrongfully discharged employee whole. *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d 326, 332 (Tenn. 1996); *Sasser v. Averitt Exp., Inc.*, 839 S.W.2d 422, 433 (Tenn. Ct. App. 1992). It is intended to replace the future income the employee would have earned with the company had his or her employment not been cut short by the wrongful termination. Front pay in not intended to be punitive, *Hansard v. Pepsi Cola Metro. Bottling Co.*, 865 F.2d 1461, 1469 (5th Cir. 1989), nor should the courts undertake to tie an award of front pay to any accompanying punitive damage award. *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d at 333.

At the conclusion of the case, and before announcing the front pay award, the trial court stated:

> If this were RCA or AT&T or General Electric or General Motors or some large company, I would feel better about it [reinstatement] than [in] a small, closely held company and especially one where there has been this extended litigation and the company has indicated a lack of candor in the evidence they produced and presented. To put someone back in a situation where [the employer has not] been truthful in this case indicates that that would probably be what would occur in the future, and I just find that untenable and will not order reinstatement. I therefore award to Ms. Lowrimore the sum of $36,327.00 front pay.

Certified Industries contends that these remarks reveal that the trial court's decision to award front pay rests impermissibly upon the same considerations that supported awarding punitive damages.

"Speech," said Moliere, "has been given to man to express his thought." In the passage relied upon by Certified Industries, the trial court was simply explaining why reinstatement was not viable as a remedy under the facts of this case. Rather than reflecting some sort of punitive animus on the trial court's part, these remarks reveal the trial court's practical appreciation of the difference in the work group dynamics between an extremely large company with non-resident management and ownership and a small, closely-held company. Ms. Kurty's remarkable comments about the reasons for Ms. Lowrimore's termination, without more, are sufficient to support the trial court's conclusion that it would be unrealistic to expect that Ms. Lowrimore could go back to work at Certified Industries's Hohenwald plant without some future difficulty. We find nothing in this record to support the assertion that the trial court awarded front pay simply because it concurred with the jury's decision to award punitive damages.

## III.
### THE AMOUNT OF THE FRONT PAY AWARD

Certified Industries also asserts that even if Ms. Lowrimore is entitled to a front pay award, it should have been much smaller. This argument requires us to recall the purpose of front pay damages and to scrutinize the trial court's award of front pay damages in light of the four factors discussed in the *Coffey v. Fayette Tubular Products* decision.

Tennessee is an employment-at-will state. Accordingly, our public policy is to defer to employers on questions concerning both the optimum size of their workforce and the retention of specific employees. The courts have, however, recognized exceptions to the employment-at-will doctrine. Employers in Tennessee may not fire workers merely because the workers reasonably exercise their legal rights. *Bloom v. General Elec. Supply Co.*, 702 F. Supp. 1364, 1366-67 (M.D. Tenn. 1988). Thus, the courts have held repeatedly that employers cannot discharge an employee simply because the employee exercised his or her statutory right to apply for workers' compensation benefits. *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d at 331; *Anderson v. Standard Register Co.*, 857 S.W.2d 555, 557 (Tenn. 1993); *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441, 444-45 (Tenn. 1984); *Johnson v. Cargill, Inc.*, 984 S.W.2d 233, 234 (Tenn. Ct. App. 1998).

Wrongful termination almost always economically harms the person fired. Thus, juries and courts charged with addressing this harm face two issues — how to compensate a discharged worker for past injuries and how to compensate him or her for future injuries. *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d at 331. The "clearest way" to make an employee whole is back pay and reinstatement to his or her former job. However, reinstatement is sometimes not feasible, especially where the employer has demonstrated hostility enough to doom a future productive and amicable working relationship. *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d at 331-332. Where reinstatement is not feasible, the court may award front pay. *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d at 332; *Sasser v. Averitt Express, Inc.*, 839 S.W.2d at 433.

Front pay is prospective compensation — loss of future earnings — awarded to the employee to put him or her in the financial position he or she would have attained over time but for the employer's wrongful firing. It is an equitable remedy. *Sasser v. Averitt Express, Inc.*, 839 S.W.2d at 433, 435. In awarding front pay courts must look at (1) the employee's future in his or her old job; (2) the employee's work and life expectancy; (3) the employee's obligation to mitigate his or her damages; and (4) the availability of comparable employment opportunities. *Coffey v. Fayette Tubular Prods.*, 929 S.W.2d at 332.

Front pay awards do not lend themselves to precise calculation; instead, they generally result from intelligent guesswork given "the uncertainties surrounding an employee's future at his or her old job." *Sasser v. Averitt Express, Inc.*, 839 S.W.2d at 433-34. To minimize any speculative nature of front pay, the courts must make front pay awards reasonably specific as to duration and amount. *Suggs v. Servicemaster Educ. Food Mgmt.*, 72 F.3d 1228, 1235 (6th Cir. 1996). A trial court's front pay determination must have a rational basis in relation to the evidence. Where the trial court's estimations, on review, "appear to be grounded in the available facts no more can be expected of a front pay determination." *Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1213 (7th Cir. 1989).

**A.**
**Ms. Lowrimore's Future In Her Former Job**

Front pay awards must be limited to the estimated remaining tenure that the discharged employee would have had with the employer had the employer not wrongfully discharged the employee. *Sandlin v. Corporate Interiors, Inc.*, 972 F.2d 1212, 1215 (10th Cir. 1992). When called upon to ascertain a fired employee's anticipated remaining tenure, the courts may begin with the proposition that the employee would have continued working indefinitely for the employer as long as it made economic sense. The employer has the burden of proving otherwise. *Curtis v. Electronics & Space Corp.*, 113 F.3d 1498, 1503-04 (8th Cir. 1997); *MacDissi v. Valmont Indus., Inc.*, 856 F.2d 1054, 1060 (8th Cir. 1988); *Nelson v. J.C. Penney Co., Inc.*, 858 F. Supp. 914, 927 (N.D. Iowa 1994), *vacated in part*, 70 F.3d 962 (8th Cir. 1995).

A wrongfully discharged employee may not recover damages for a future period beyond which the employee would have lost his or her job anyway. *Raimondo v. Amax, Inc.*, 843 F. Supp. 806, 809 (D. Conn. 1994). For example, a front pay award may be inappropriate when, due to a company's deteriorating financial condition and ongoing workforce reductions, little likelihood exists that the employee's job would have continued. *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1143 (7th Cir. 1994). If an employer can prove that its business is shutting down or cutting back due to losing the market for its product, then front pay damages should end with the shutdown. *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1182 (2nd Cir. 1996); *Adama v. Doehler-Jarvis, Div. of NL Indus., Inc.*, 376 N.W.2d 406, 410 (Mich. Ct. App. 1985). The employer bears the burden of proof on this issue. *Graefenhain v. Pabst Brewing Co.*, 870 F.2d at 1209.

Certified Industries made some effort to convince the trial court that it was financially insecure. During the damages portion of the trial, the manager of the Hohenwald plant testified how recent industry-wide changes in technology had hurt the company's competitiveness. He testified that income was down and that the workforce at the Hohenwald plant had been cut back. However,

the manager never testified that Certified Industries would have eliminated Ms. Lowrimore's metal finisher position because of these changes in the marketplace. Certified Industries introduced no evidence that the Hohenwald plant was closing or that Ms. Lowrimore would have lost her job after 1995 for everyday business reasons. In the absence of evidence that Ms. Lowrimore's layoff was economically inevitable in the normal course of business, we cannot say that the balance of the evidence preponderates against the trial court's front pay ruling.

## B.
## Ms. Lowrimore's Work and Life Expectancy

It is also possible that Ms. Lowrimore might have quit her job before her retirement. Workers in America quit their jobs every day for all sorts of reasons like job dissatisfaction, difficulties with co-workers, family problems, moves, and, not uncommonly, the chance to make more money elsewhere. One national magazine recently estimated that in 2000, approximately seventeen million workers quit their jobs to take other jobs.[1]

The trial court based its calculation of Ms. Lowrimore's front pay damages on its assumption that Ms. Lowrimore would have worked at Certified Industries for another twenty years. Would she? Is that too speculative? Some courts have determined that twenty-year front pay awards go too far. *United Paperworkers Int'l Union v. Champion Int'l Corp.*, 81 F.3d 798, 805 (8th Cir. 1996); *Place v. Abbot Labs., Inc.*, No. 94C5491, 1999 WL 301654, at *16 (N.D. Ill. Apr. 30, 1999); *Frank v. Relin*, 851 F. Supp. 87, 95 (W.D.N.Y. 1994). Other courts have upheld twenty-year front pay awards. *Padilla v. Metro-North Commuter R.R.*, 92 F.3d 117, 126 (2nd Cir. 1996); *Feldman v. Philadelphia Hous. Auth.*, 43 F.3d 823, 832-33, 841 (3rd Cir. 1994); *Tanzini v. Marine Midland Bank, N.A.*, 978 F. Supp. 70, 81 (N.D.N.Y. 1997); *Morris v. Clawson Tank Co.*, 587 N.W.2d 253, 256, 263-64 (Mich. 1998); *Stark v. Circle K Corp.*, 751 P.2d 162, 168 (Mont. 1988). One thing is clear. The appropriate period for an award of front pay must turn on each case's specific facts. *Frank v. Relin*, 851 F. Supp. at 95.

Ms. Lowrimore's work history indicates that she has been something of a job-hopper. Beginning as a teenager, she has worked in a several restaurants and in four other factories. However, the evidence shows that all of those were more or less minimum wage jobs, some combined with "piece work" (pay pegged to productivity). She testified that her metal finisher job at Certified Industries paid more than minimum wage. She also indicated that, as an unmarried woman, she had to work to support herself. No evidence showed that Ms. Lowrimore was contemplating volitionally quitting her job at Certified Industries or that some other circumstance looming in her life would force her to quit.

Ms. Lowrimore introduced the Tennessee Code Annotated's mortality tables[2] to show statistically that she has a life expectancy of 38.12 years. She also argued that she "probably has an average worklife of twenty to twenty-five years." Although this court might not approve a twenty-

---

[1] Kim Clark, "Why It Pays to Quit," *U.S. News & World Report*, Nov. 1, 1999, at 74.

[2] 13 Tenn. Code Ann. at 1025-34 (1995).

year front pay award in all cases, in this case we cannot say that the evidence preponderates against the trial court's decision to base its front pay award on a conclusion that Ms. Lowrimore would have remained in Certified Industries's employ for twenty years. As the Tennessee Supreme Court recently admonished us, "[a]ppellate courts correct errors. When no error in the trial court's ruling is evident from the record, the trial court's ruling must stand." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). We cannot say that the trial court misweighed Ms. Lowrimore's work and life expectancy in its calculation of front pay damages.

## C.
### Ms. Lowrimore's Obligation To Mitigate Her Damages

The concept of front pay does not contemplate that a discharged employee will be compensated for idling. *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2nd Cir. 1984). A wrongfully discharged employee must mitigate his or her damages. *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d 869, 870 (5th Cir. 1991); *Raimondo v. Amax, Inc.*, 843 F. Supp. at 809. In real terms, that means the discharged employee must do something to replace his or her lost income. Usually that entails finding and accepting comparable employment. As an argument against awarding front pay damages, the employer may show failure to mitigate. *Acrey v. American Sheep Indus. Assoc.*, 981 F.2d 1569, 1576 (10th Cir. 1992); *Nelson v. J.C. Penney Co., Inc.*, 858 F. Supp. at 928.

Ms. Lowrimore started looking around Hohenwald for another job fairly promptly after Certified Industries fired her. She sought employment at local convenience markets and grocery stores and also inquired at a few area factories, including at least one where she had previously worked. In early 1996 she found work at the nursing home where she now works.

Certified Industries asserts, however, that Ms. Lowrimore could have done better than take the nursing home job. As it happens, Ms. Lowrimore neither drives nor owns an automobile. Certified Industries characterizes this lifestyle choice as "self-imposed without just cause" and contends that because Ms. Lowrimore lacks motorized transportation of her own, she has not done enough to get out and get a better job. Certified Industries's entire mitigation argument is that Ms. Lowrimore should not go about in modern society as a passenger and a pedestrian.

To prevail with this argument, Certified Industries must show that Ms. Lowrimore's course of conduct after she was terminated "was so deficient as to constitute an unreasonable failure to seek employment." *Morris v. Clawson Tank Co.*, 587 N.W.2d at 259. It must demonstrate that the employee's actions caused him or her to lose out on existing identifiable, suitable work. *Raimondo v. Amax, Inc.*, 843 F. Supp. at 809. Certified Industries failed to provide proof of this sort. In fact, Certified Industries did not even prove that Ms. Lowrimore's decision to live her life without an automobile has ever kept her from securing some specific, identifiable position that she otherwise could have obtained. In light of the evidence in this record, Certified Industries's abstract point — that Ms. Lowrimore does not drive — standing alone, makes no difference and does not provide grounds for reversing the trial court.

Where an employee has mitigated his or her future damages by taking another job, front pay awards ordinarily should reflect the wage differential between the lost job and the new job. *Frank v. Relin*, 851 F. Supp. at 95-96. Stated more simply, the damages for front pay are the difference between what the employee makes in any new job versus what the employee would have earned in the job from which he or she was wrongfully fired. *Reneau v. Wayne Griffin & Sons, Inc.*, 945 F.2d at 870; *Buckley v. Reynolds Metal Co.*, 690 F. Supp. 211, 217 (S.D.N.Y. 1988).

Certified Industries contends that the trial court erred in its calculation of Ms. Lowrimore's front pay by basing its calculation of her wages while employed at Certified Industries on a forty-hour work week. Relying on Ms. Lowrimore's actual 1995 pay stubs, Certified Industries asserts that she did not always work a forty-hour week. These pay stubs substantiate Certified Industries's claim. They show that during some weeks while Ms. Lowrimore was employed at Certified Industries, she worked from twenty-four to thirty-eight hours per week.

By basing its calculations on the assumption that Ms. Lowrimore regularly worked a forty-hour week, the trial court determined that she earned $290 per week while at Certified Industries.[3] However, if the calculation had been based on Ms. Lowrimore's actual 1995 pay stubs, her weekly salary in 1995 was $272.[4] Thus, we find that the trial court should have based its calculations on $272 rather than $290 as Ms. Lowrimore's average weekly salary while she was working at Certified Industries.

The other relevant figure in computing front pay is Ms. Lowrimore's weekly salary at her new job. In 1997, the latest full year for which she could supply salary figures, Ms. Lowrimore was working forty hours per week and was earning $5.75 per hour. Based on this evidence, the trial court correctly determined that her weekly salary at her new job was $230.

Accordingly, Ms. Lowrimore's front pay should have been calculated on the difference between $272 (her weekly salary at Certified Industries) and $230 (her weekly salary at her new job). This amounts to a new differential of $42 per week, rather than the $60 per week figure used by the trial court. Multiplying the correct $42 differential by 1,040[5] and employing the six percent discount rate employed by the trial court[6] results in a determination that the present value of Ms. Lowrimore's front pay is $25,429. Accordingly, to correct the trial court's error, the amount of the front pay award should be reduced from $36,327 to $25,429.

---

[3]Based on the evidence that Ms. Lowrimore earned $7.25 per hour at Certified Industries, the trial court calculated her weekly salary as follows: $7.25 (hourly wage) × 40 (hours per week) = $290.

[4]$10,606.64 (actual 1995 salary) ÷ 39 (number of weeks Ms. Lowrimore worked in 1995) = $271.97.

[5]52 (weeks in a year) × 20 (years Ms. Lowrimore would have remained with Certified Industries) = 1,040.

[6]Neither party has taken issue with the trial court's use of a six percent discount rate.

**D.**
**AVAILABILITY OF COMPARABLE EMPLOYMENT OPPORTUNITIES**

When called upon to calculate front pay, the courts must also take into account the availability of opportunities for employment similar to the job from which the employee was terminated. This factor can cut both ways in influencing any decision about front pay. The person wrongfully discharged may try to show that available replacement employment was not as good as the old position, thus supporting higher front pay damages. On the other hand, the employer may seek to prove that comparable available employment was readily available and, therefore, that the employee was either not damaged or possibly even better off after being terminated.

Neither party in this case honed in on this factor at trial. If anything, Ms. Lowrimore's evidence may have shown that there are few good paying, entry level jobs in Lewis County for someone without a high school diploma. On this record, we cannot say that the trial court misweighed this factor.

When these four factors are weighed together, the evidence supports the trial court's decision that it would not have been feasible for Ms. Lowrimore to return to her old job at Certified Industries. Other than the error in Ms. Lowrimore's weekly salary while employed at Certified Industries, the evidence support the manner in which the trial court calculated the amount of Ms. Lowrimore's front pay damages. Accordingly, after correcting the error, we reduce the amount of Ms. Lowrimore's front pay damage award from $36,327 to $25,429.

**IV.**

We affirm the front pay award as modified herein and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to Certified Industries, Inc. and its surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE