William **REILLY**, Plaintiff,

v.

Henry G. **CISNEROS**, Secretary, United States Department of Housing and Urban Development, Defendant.[1]

No. 89–CV–0885E(M).

United States District Court, W.D. New York.

Aug. 10, 1993.

---

**1.** The designation of the defendant has been changed pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

William A. Price, Buffalo, NY, for plaintiff.

Stephan J. Baczynski, Asst. U.S. Atty., Buffalo, NY, for defendant.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

Plaintiff Reilly brought this action pursuant to the Rehabilitation Act of 1973 ("the Rehab Act"), 29 U.S.C. § 791, alleging that the United States Department of Housing and Urban Development ("HUD") had unlawfully discharged him from his position as Area Counsel without proper accommodation of his handicap—namely, alcoholism. After a non-jury trial before this Court, liability of HUD was found to exist. *See* Memorandum and Order dated August 29, 1991. Post-trial briefs were submitted by the parties on the issue of damages and oral argument was heard thereupon June 5, 1992. By Memorandum and Order dated August 4, 1992, this Court found that an evidentiary hearing would be necessary in order to resolve such issue. The hearing was conducted December 2, 1992 and at nine sessions thereafter. The parties submitted proposed findings of fact and conclusions of law and oral argument was heard May 14, 1993.

Reilly was discharged from HUD January 20, 1989. He started his search for other employment in the Spring or Summer of 1989 by making informal inquiries as to job opportunities and letting it be known that he was available for work. During such period Reilly was still recovering from his alcoholism and assisting the woman with whom he was living in her recovery from back surgery.

In mid–1989 Reilly learned of an opening for the General Counsel position at the New York State Housing Finance Agency, applied for it, was interviewed in New York City but was not hired. In early 1990 he was advised of an opening at the United States Small Business Administration ("the SBA"). He wrote to the SBA February 12th, had two interviews for a position and was hired March 12th as an Attorney Advisor for the SBA's disaster relief operation. He was sent to the Caribbean to work in the Hurricane Hugo relief effort. The SBA position was a temporary one and, after his tenure had been extended numerous times, he was terminated March 21, 1992. During this temporary employment Reilly had applied unsuccessfully for a permanent position with the SBA. In October of 1991 and subsequently, Reilly had sent out to local firms a number of résumés seeking employment.

In March of 1992, just prior to and immediately after his discharge from the SBA, Reilly sent out résumés to a number of local law firms and development companies seeking employment. He also wrote to a number of schools seeking a teaching position. None of such inquiries resulted in a job offer. Reilly remained unemployed until November, when he again took a temporary position with the SBA as part of the latter's relief efforts following Hurricane Andrew.

On November 10, 1992 HUD offered Reilly the position of Senior Public Housing Specialist ("Housing Specialist"). Such position had been created for Reilly and embodied the same salary and benefits as he had had as Area Counsel. Reilly interviewed for this

position and obtained some material descriptive of its parameters. After a period of time and at the outset of the evidentiary hearing, he rejected such offer.

In the present case two mitigation issues must be addressed as facets of determining damages. Firstly, it must be decided whether Reilly adequately mitigated his damages by diligently seeking substantially similar employment. Secondly, this Court must decide whether Reilly's rejection of HUD's offer to hire him as Housing Specialist was unreasonable and, therefore, a bar to his recovery of subsequent damages.

The remedies set forth in section 706(g) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(g), apply to claims under the Rehab Act and, therefore, the case law applying and interpreting section 706(g) is pertinent here. *See* 29 U.S.C. § 794a(a)(1). Section 706(g) provides that "back pay" may be awarded. The United States Supreme Court has limited a district court's discretion in making such award by holding that "backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). "Front pay" may also be awarded under section 706(g) as appropriate equitable relief where reinstatement is undesirable because of the resultant "bumping" of the present incumbent from the plaintiff's former position or because hostility between the parties would preclude an efficient work environment. *See Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727–728 (2d Cir.1984) (front pay in ADEA case); *Dunlap–McCuller v. Riese Organization*, 980 F.2d 153, 159 (2d Cir.1992) (Title VII). Section 706(g) also provides that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." Thus this plaintiff had a duty to mitigate his damages by exercising reasonable diligence in seeking substitute employment that is substantially similar to his former employment or else risk having the amount of damages reduced by the amount that could have been earned. *See Johnson v. Chapel Hill Independent School Dist.*, 853 F.2d 375, 383 (5th Cir.1988). Such duty applies to both back pay and front pay awards. *See Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1347 (9th Cir.1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988).

In determining whether a plaintiff has met his duty to mitigate, a court must look at whether he used reasonable diligence in his search for comparable employment and, where he has rejected an offer of employment, whether such rejection was reasonable. *See E.E.O.C. v. Exxon Shipping Co.*, 745 F.2d 967, 978 (5th Cir.1984). The burden is on the defendant to show that the plaintiff did not exercise reasonable diligence in seeking to mitigate damages. *See Gaddy v. Abex Corp.*, 884 F.2d 312, 318 (7th Cir. 1989). In carrying such burden herein the defendant must show more than that there were steps towards finding comparable employment other than those Reilly took; it must "show that the course of conduct plaintiff actually followed was so deficient as to constitute an unreasonable failure to seek employment." *See E.E.O. v. Kallir, Philips, Ross, Inc.*, 420 F.Supp. 919, 925 (S.D.N.Y. 1976), *aff'd*, 559 F.2d 1203 (2d Cir.), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). In general, a plaintiff fails to mitigate adequately and therefore is entitled to neither back pay nor front pay "to the extent he fails to remain in the labor market, fails to accept substantially similar employment, fails diligently to search for alternative work, or voluntarily quits alternative employment without good reason." *See N.L.R.B. v. Madison Courier, Inc.*, 472 F.2d 1307, 1317 (D.C.Cir.1972) (*quoting from N.L.R.B. v. Mastro Plastics Corporation*, 354 F.2d 170, 174 fn. 3 (2d Cir.1965), *cert denied*, 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966)).

If a plaintiff rejects an offer of substantially similar employment, he loses his right to pay from and after the time of such rejection—*see Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–232, 102 S.Ct. 3057, 3065, 73

L.Ed.2d 721 (1982). *See Dominic v. Consolidated Edison Co. of New York, Inc.*, 822 F.2d 1249, 1258 (2d Cir.1987). In order to be substantially similar to a plaintiff's former position, the new position must afford him or her virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status as the former position. *See Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983), *cert denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984); *Floca v. Homcare Health Services, Inc.*, 845 F.2d 108, 111 (5th Cir.1988); *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1527 (11th Cir.1991). A plaintiff is not obligated, however, to accept a position that "is not consonant with his particular skills, background and experience"— *N.L.R.B. v. Madison Courier, Inc.*, 472 F.2d at 1320, 1321—, "go into another line of work, accept a demotion or take a demeaning position * * *." *Ford Motor Co. v. EEOC*, 458 U.S. at 231, 102 S.Ct. at 3065.

■ HUD claims that Reilly failed to mitigate adequately during certain periods of the time in which he claims entitlement to back pay. It argues that from January 20, 1989 until March 11, 1990 Reilly was unemployed and, besides word-of-mouth inquiries, did nothing to look for work. He had only two interviews during such period, one for the Housing Finance Agency position and one for the SBA position. Reilly claims that immediately after his discharge from HUD he was somewhat stymied in his search for work because of his own continuing battle with alcoholism and because of his paramour's back problems—the latter not considered to be a handicap to Reilly for the instant purposes. He also claims that he was discouraged from looking because of his feeling that the animosity between himself and Lynch, his erstwhile immediate superior at HUD, would be known to employers and dissuade them from hiring him. Lastly he cites the HUD policy that he could not represent clients on matters before HUD for one year after his termination.

■ While the burden of mitigation is not onerous and does not require success, it does require that a plaintiff show an honest, good faith effort to obtain comparable employment. *See Brooks v. Woodline Motor Freight, Inc.*, 852 F.2d 1061, 1065 (8th Cir. 1988). A plaintiff, for example, cannot merely look through want ads—*see E.E.O.C. v. Service News Co.*, 898 F.2d 958, 963 (4th Cir.1990)—or spend an insufficient amount of time and effort looking for work—*see Payne v. Security Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 111 (7th Cir.1991). A plaintiff must demonstrate that he made and is making an effort that is reasonably calculated to find comparable work. The reasonableness of a plaintiff's search for comparable employment must be assessed in light of the circumstances of the individual case. *See Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d at 624. Reasonable diligence does not require success or depend on the plentitude of applications made. A plaintiff must show only a good faith effort.

During 1989 Reilly claims that he relied on a word-of-mouth campaign and therefore did not send out résumés or applications for employment. Reilly claims that relying on word of mouth to search for employment is sufficient diligence to warrant back pay. He cites *Marshall v. Arlene Knitwear, Inc.*, 454 F.Supp. 715, 731 (E.D.N.Y.1978), *aff'd in part, rev'd in part*, 608 F.2d 1369 (2d Cir. 1979), wherein it was found in an age discrimination suit that a 62–year old clothing designer had adequately mitigated her damages by relying on word-of-mouth contact with her "excellent contacts" obtained as vice-president of a small trade association and by registering with a specialized employment agency. He also cites *E.E.O. v. Kallir, Philips, Ross, Inc.*, 420 F.Supp. at 925, wherein reasonable diligence was found in a word-of-mouth search where it had been adequately shown that such was the way employees were obtained for vacancies in pharmaceutical advertising positions. Reilly claims that likewise he "let it be known that [he] was available."

HUD's main argument is that Reilly did not engage in a job search that was reasonably calculated to secure employment. It argues that he made only two job applications during the first year of his unemployment, made minimal efforts during his temporary employment with the SBA and that

his efforts in the Fall of 1991 and Spring of 1992 were orchestrated by his counsel and, in any event, do not demonstrate good faith on Reilly's part. HUD argues that a plaintiff may not simply abandon his job search and continue to recover back pay. *See Hansard v. Pepsi–Cola Metropolitan Bottling Co.*, 865 F.2d 1461, 1468 (5th Cir.), *cert. denied*, 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989) (plaintiff by own admission stopped looking for work).

While at first blush Reilly's efforts seem minimal, in light of his circumstances and the positions for which he was searching his efforts sufficiently demonstrate the showing of good faith required for mitigation. After his discharge Reilly could not have been expected to start a comprehensive job search immediately. He had spent eighteen years at HUD and was in the midst of trying to cope with his alcoholism. After a few months had passed, one could reasonably expect increased activity geared towards finding employment. Reilly claims that he began a word-of-mouth campaign, letting it be known that he needed work. Such effort resulted in an interview with the Housing Finance Agency. While, after this interview and notification that he did not receive the Finance Agency position, Reilly did not get word until February of 1990 about employment with the SBA, this Court will not say that his failure to take further steps indicated a lack of good faith. Reilly's contacts did alert him to a comparable position. While HUD contends that Reilly should have been more aggressive in contacting law firms or other possible employers, there is no indication that sending out résumés would have resulted in any comparable job offer. As HUD points out, the mere sending of résumés without knowledge of an actual opening or some kind of contact with insiders at the firms targeted does not usually produce a job offer. Employment comparable to the Area Counsel position which Reilly had held at HUD is not readily available in the area job market. The mere fact that Reilly's word-of-mouth campaign had only limited success—that is, found only one available position during the first year— is more likely due to the unavailability of such positions than to the inadequacy of such method. In light of the fact that Reilly obtained temporary employment at the SBA and continued such for two years—the limit of that particular employment due to assuagement of the emergency—, regained similar temporary employment at the SBA— which continues to date—and earned from January 1990 to the end of 1992 approximately forty percent of what he would have earned at HUD, Reilly has adequately mitigated his damages and is entitled to the amount of back pay which exceeds such interim earnings.

■ Turning to HUD's offer of employment to Reilly, this Court finds that Reilly's rejection of such offer was unreasonable and that any liability on the part of HUD for pay ended upon Reilly's rejection. *See Clarke v. Frank*, 960 F.2d 1146, 1151 (2d Cir.1992).

■ Obviously where the offered position is the same as the former position, a plaintiff cannot reject the offer without forfeiting his right to be paid. *See Ford Motor Co. v. EEOC*, 458 U.S. at 232, 102 S.Ct. at 3065. Where the positions are not exactly the same, however, a court must review their differences and determine whether they are sufficiently comparable as to equate the plaintiff's non-acceptance of such to the forfeiture of his right to further pay. The basic question is whether a plaintiff's rejection was unreasonable. *E.E.O.C. v. Exxon Shipping, Co.*, 745 F.2d at 978. Reilly offers two main reasons for his rejection of the Housing Specialist position. He contends that it would essentially be a demotion and that it is a non-lawyer position.[2] He argues that it would be a demotion because the incumbent in the Area Counsel position is on the same level as a Division Director, provides legal advice to all Division Directors on all HUD projects and supervises two other attorneys, a paralegal and a secretary, whereas the Housing Specialist is subordinate to one Division Director, advises a single Division Director on projects of his or her division with such advice being subject to review by the Area Counsel, and does not supervise a staff. He

---

**2.** He puts forth a third reason—*viz.*, that, as the Housing Specialist, he would have to use a corridor nearby to Lynch's office—which is found to be without any legitimate merit.

argues that the position is non-legal because the job description shows that he would be concerned with the technical aspects of various projects and because he would be evaluated by non-lawyers. Reilly also argues that the positions are not comparable because of the less-than-secure nature of the position he would occupy given its one-of-a-kind nature. HUD responds that, inasmuch as Reilly could not be rehired into the Area Counsel position or another Division Director level position, the position was created as to restore him so far as possible to the position in which he would have been but for the unlawful discrimination.

The Housing Specialist position is consonant with Reilly's background as an attorney who, as Area Counsel, was well aware of the programs administered by HUD. While Reilly tries to argue that the position is a non-legal position, the job description itself refers to contract interpretation, modification of contracts, interpretation of statutes and regulations and other activities usually thought of as within the purview of attorneys. Reese, the Division Director to whom Reilly would report, testified that he planned to use Reilly as an attorney-advisor. Thus Reilly was not asked to go into another line of work. In fact, while Reilly claimed to be a "lawyer at heart" he considered himself a very specialized lawyer, unable to carry on the general practice of law but suited to be an attorney-advisor with regard to HUD programs, just the type of position that was offered to him.

There is no question that the Housing Specialist position was not a demeaning position and that it carried the same compensation and benefits as had and did Reilly's former position. Both had the same promotional opportunities up through HUD's hierarchy—e.g., to HUD's regional office. The working conditions were basically the same. The new position seems to carry a reduced work load, which is reflected in the lack of a staff comparable to that which is provided the Area Counsel. The responsibilities of the new position are also reduced in quantity but the quality is the same or closely comparable; each position requires the attorney to

render to Division Directors legal advice as to HUD programs. The status is equivalent as both positions require the occupant to be an attorney.

Reilly argues that the Area Counsel focuses upon the most complicated HUD projects while the Housing Specialist would focus only on public housing project issues. But there is no evidence that the public housing projects would be any less complicated. Reilly points to the greater responsibility shouldered by the Area Counsel and argues that such indicates a higher status position. He also points to the Area Counsel's staff and argues that the lack of a staff indicates a lower status. To accept, however, Reilly's narrow definition of comparable employment would result in no comparable employment being available except the Area Counsel position itself. As Reilly admits, the Area Counsel position is unique and is the only one of its kind available in HUD's operations in this area. Given that Reilly could not be reinstated into the Area Counsel position because of the animosity between him and Area Director Lynch, he would have to find comparable employment elsewhere and could not remain idle and expect to be compensated by pay for the entire period until his normal or expected retirement. See Whittlesey v. Union Carbide Corp., 742 F.2d at 728. It is doubtful that there is another available position that would embody advising five directors as to the legal aspects of their programs and offer the occupant a staff of four. Therefore to allow Reilly to reject HUD's offer because in his former position he advised more people and had a staff, would basically allow him to reject all offers of employment that might be made. This Court cannot accept such a narrow definition of substantially similar employment.

█ The offered position can be declined if it is a demotion—see Carrero v. New York City Housing Authority, 890 F.2d 569, 580 (2d Cir.1989)—such as offering a regional sales supervisor a "glorified traveling salesman" position—see Spagnuolo v. Whirlpool Corp., 717 F.2d 114, 117–118 (4th Cir. 1983),—offering a position subordinate to the employee's former position—see Lander v. Lujan, 888 F.2d 153, 155 (D.C.Cir.1989)—or

offering a part-time teaching position in lieu of a full-time one—*see Watlington v. University of Puerto Rico*, 751 F.Supp. 318, 330 fn. 8 (D.Puerto Rico 1990). *See E.E.O.C. v. Exxon Shipping Co.*, 745 F.2d at 979 (offered position which required weekend work properly declined). But the offered position need not be identical. It need only be as comparable to the old position as to put the employee who has suffered discrimination in as near to the same position as he would have been absent the discrimination. It need not carry the same responsibilities or deal with the identical areas that were present in the former position. Although the Housing Specialist position is a different position from the Area Counsel position and does not have the broad responsibilities of such position, this Court finds, in light of the circumstances, that such positions are substantially similar, that Reilly's acceptance of such position would not have represented a demotion and that Reilly's rejection of such position was unreasonable.

Therefore HUD is to pay Reilly the amount he would have received working the Area Counsel position from January 20, 1989 until December 2, 1992—the date Reilly rejected HUD's offer of employment—minus the amounts he earned during such period while working at the SBA. The interim earnings at the SBA shall include any amounts Reilly earned for working overtime. Section 706(g) states that interim earnings are deducted from a backpay award. It does not distinguish between standard pay and overtime pay.

Accordingly, it is hereby **ORDERED** that HUD is to pay Reilly the amount of back pay owed in accordance with the foregoing including the appropriate interest thereupon.