**Joann S. REED, Plaintiff,**

v.

**A.W. LAWRENCE & CO., INC., Defendant.**

No. 92–CV–1554.

United States District Court, N.D. New York.

July 3, 1995.

Gleason, Dunn, Walsh & O'Shea, Albany, NY (Ronald G. Dunn, of counsel), for plaintiff.

Roemer & Featherstonhaugh, Albany, NY (Michael P. Mullen, of counsel), for defendant.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

Plaintiff brought this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and New York Human Rights Law claiming that defendant subjected her to sexual harassment and sexual discrimination creating a hostile work environment, and claiming that she was discharged in retaliation for her complaint about a sexually offensive comment made by another employee of A.W. Lawrence & Co., Inc. After the close of discovery and before trial, plaintiff voluntarily discontinued her claims of sexual harassment, sexual discrimination and hostile work environment. The case went to trial

only on the retaliatory discharge claims. The jury found in plaintiff's favor and awarded her $60,000 for lost wages and benefits and $5,000 for emotional pain and anguish.

At the end of plaintiff's proof at trial, which corresponded with the end of all proof because defendant rested without submitting any proof, the defendant moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. The court reserved on this motion. Plaintiff moved for front pay and attorney's fees and the court reserved on these motions as well. The parties were directed to submit additional briefing on the front pay and attorney's fees issues. Defendant also submitted a renewed motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) after the trial.

## II. DISCUSSION

### A. Judgment as a Matter of Law

Fed.R.Civ.P. 50(b) states that:

[w]henever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment ... If a verdict is returned, the court may, in disposing of the renewed motion, allow the judgment to stand or may reopen the judgment ...

In this case, the court reserved on the defendant's motion for judgment as a matter of law and sent all issues to the jury. The jury returned a verdict in favor of the plaintiff. Defendant renewed its motion pursuant to Rule 50(b).

The standard for deciding such a motion is the same whether the motion is made before the case is submitted to the jury or after the jury has returned its verdict. Since judgment as a matter of law deprives the non-moving party of a determination of the facts by a jury, it should be granted "cautiously and sparingly." 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2524 (1995). The Second Circuit has elaborated on the standard for granting Rule 50 motions: "[s]imply stated, it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [individuals] could have reached. *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970). In considering such a motion, "the evidence must be viewed in the light most favorable to the party against whom the motion is made and [she] must be given the benefit of all reasonable inferences which may be drawn in [her] favor from that evidence." *Id.*

Defendant here asserts that plaintiff failed to prove her *prima facie* case because she did not show that she was engaged in a protected activity, that she had a reasonable, good-faith belief that her co-worker's comments violated the law, or that there was a causal connection between the alleged protected activity and the decision to terminate her. Defendant also argues that plaintiff did not refute defendant's proffered reason for her termination as pretextual.

In regard to protected activity, it is clear from the evidence offered at trial that plaintiff discussed her co-worker's comment with Rita Harfield, an executive of an affiliated company who in turn advised Gary Keefus and Carm Roberson about the use of objectionable language. Plaintiff was then interviewed about the incident by Roberson, the Vice President of Personnel for the Lawrence Group. The court finds that from this evidence a reasonable jury could have reached more than one conclusion as to whether her complaint was a protected activity.

As for plaintiff's reasonable, good-faith belief that her co-worker's comment violated the law, the court also finds that from the trial evidence a reasonable jury could have reached more than one conclusion. As stated in the jury instructions, to prove this element, the plaintiff does not have to prove that her co-worker's actions actually violated the law, just that she had a reasonable, good-faith belief that they did. Defendant's assertion that because plaintiff is "a

college-educated career woman with considerable experience in the business world" who had filed a sexual harassment claim against a former employer she knows what conduct is violative of Title VII and what is not is not necessarily true by any means. Plaintiff's education and experience do not necessarily make her proficient in Title VII law.

As stated in the jury instructions, in regard to the causal connection element of the *prima facie* case, plaintiff may demonstrate a causal connection by a preponderance of the evidence if she shows that her complaint about her co-worker's comment was followed closely in time by her termination. Thus, if she showed that her termination came soon after her complaint, she has proven this element of her *prima facie* case. Plaintiff showed at trial that she complained to Harfield on September 17, 1991, was interviewed by Roberson on September 26, 1991, and was terminated on October 1, 1991. Thus, the court finds from this evidence that a reasonable jury could have reached more than one conclusion regarding her proof of the causation element.

In regard to pretext, defendant makes the conclusory allegation that plaintiff did not refute defendant's stated reason for her termination. However, defendant does not elaborate on this argument. Having heard all the evidence presented at trial, the court finds that a reasonable jury could have reached more than one conclusion regarding her proof of the pretext element.

Further, the court finds defendant's discussion of the requirements to prove sexual harassment and hostile work environment, especially discussing at length the need for pervasive conduct, superfluous in regard to its Rule 50 motion on the retaliatory discharge claim. In bringing only her retaliatory discharge claim to trial, plaintiff was not suing for the utterance of the comment itself, but rather she was suing for allegedly being discharged for reporting the comment. Thus, the pervasiveness or non-pervasiveness of the comment is irrelevant because plaintiff is alleging that the discriminatory conduct was her termination not the comment itself. Thus, the Rule 50 motion is denied.

## B. Front Pay

Plaintiff seeks front pay in lieu of reinstatement in addition to the award of damages granted by the jury. She seeks an amount of $65,000, the equivalent of the backpay and emotional damages awards. She states that this amount will constitute approximately two years' salary, or the amount of time she believes it will take her to find alternative equivalent employment or make her consulting business profitable. Pltf. Aff. at ¶ 9.

"Front pay may not be an appropriate remedy in all situations, but under particular circumstances it may be appropriate when reinstatement is either impossible or impracticable." *Frank v. Relin*, 851 F.Supp. 87, 93 (W.D.N.Y.1994). In this case, the office where plaintiff worked appears to have subsequently closed, and prior to this plaintiff had been replaced by an individual completely unrelated to the conduct at issue in this suit. Furthermore, trial testimony proffering defendant's reasons for plaintiff's termination shows that antagonism between the parties would make reinstatement unworkable even if the office was still open. Thus, reinstatement is inappropriate in this case, and so the court properly examines the front pay issue. *See Reilly v. Cisneros*, 835 F.Supp. 96, 99 (W.D.N.Y.1993) (noting that reinstatement was undesirable where antagonism and "bumping" of the subsequent job holder would occur).

Front pay "may properly be awarded where the calculation of plaintiff's likely mitigated earnings and the income she would have earned, but for her unlawful termination, do not involve 'undue speculation.'" *Frank*, 851 F.Supp. at 93. The decision to award front pay is discretionary and a request for front pay may be denied if the court finds that the back pay award is sufficient to make the plaintiff whole. *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir.1993).

Plaintiff has a duty to exercise reasonable diligence in seeking alternative similar employment or risk having the

amount of front pay damages reduced by the amount that could have been earned. *Reilly,* 835 F.Supp. at 99. Plaintiff must show a "good faith effort" and the reasonableness of plaintiff's actions must be assessed in light of the individual circumstances of the case. *Id.* at 100. "Reasonable diligence does not require success or depend on the plenitude of applications made." *Id.* In determining whether the plaintiff is entitled to front pay, the court must examine whether she has used reasonable diligence in her job search and the burden lies with the defendant to show that plaintiff did not exercise such diligence. *Id.* at 99. In order to successfully thwart a front pay award, defendant must "show that the course of conduct plaintiff actually followed was so deficient as to constitute an unreasonable failure to seek employment." *Id., quoting, E.E.O.C. v. Kallir, Philips, Ross, Inc.,* 420 F.Supp. 919, 925 (S.D.N.Y.1976).

At trial, plaintiff elaborated on various efforts she has made to find other employment. Trial testimony shows that she has applied for more than ten but less than fifty jobs. She has read the newspaper, has sought employment by word of mouth, applied to teach GED classes at Raybrook Correctional Facility and has taken the New York Civil Service examination. She has applied to the Regional Development Authority and the Foreign Service, although a Foreign Service position seems untenable given her affidavit explaining her need to stay in Upstate New York. Since her termination plaintiff has started her own consulting company which has yet to show a profit. She notes that her efforts to find other gainful employment have been geographically limited because her husband is employed in the Lake Placid area and they own a house there. She attests that she has been unable to find employment in the area remotely approaching the wages and benefits offered in her previous job with A.W. Lawrence & Co., Inc. Pltf. Aff. at ¶ 8. She notes that she continues to actively pursue full-time employment opportunities in the area but does not elaborate on the nature and extent of this job search. Pltf. Exh. at ¶ 8.

From this information, the court finds that plaintiff has made a good faith effort to find alternative employment, and the defendant has not shown that plaintiff has undertaken a course of conduct "so deficient as to constitute an unreasonable failure to seek employment." Nevertheless, the court does not find it appropriate to award the full amount of front pay sought by plaintiff. Plaintiff has stated that the defendant's office in which she worked was scheduled to close as of November 1, 1994. The court has been provided with no evidence that this closure did not occur as scheduled. Thus, had plaintiff not been discriminatorily fired, and given her stated unwillingness or inability to relocate, the court cannot find that she would have continued to work for defendant beyond November 1, 1994. Thus, the front pay award must be calculated accordingly.

Plaintiff has sought $65,000 in front pay as the equivalent of the jury award. However, the jury clearly awarded $5,000 of that amount for emotional damages and only the remaining $60,000 for backpay. Thus, the court begins its calculation from the $60,000 amount. Given that plaintiff seeks two years of wages, and the time between the date of jury award, September 15, 1994, and the scheduled closing of the office, November 1, 1994, is approximately seven weeks, the court awards $4038.46 in front pay representing compensation for seven weeks of work out of the two years sought.

### C. Costs and Attorney's Fees

Plaintiff also seeks costs and attorney's fees. Defendant accepts that plaintiff is the prevailing party to some degree, but notes that her award of attorney's fees should be limited to the hours directly traceable to her successful retaliation claim and not to her abandoned claims for sexual harassment, hostile work environment and sex discrimination. Defendant also claims that the award should be lowered even in regard to the retaliation claim because of plaintiff's "general lack of success on that claim." Defendant also argues that attorney's fees are not available under New York Executive Law, and thus any award of attorney's fees must not be related to her state claims. Defendant

also asserts that plaintiff should not be reimbursed for the time and costs involved in bringing the motion for attorney's fees.

Plaintiff seeks $56,587.07 for fees and costs, representing $49,071.00 in attorney's fees and $7,516.07 in costs, and has submitted an additional request for $620.62 since the original motion, representing $262.50 in fees and $358.12 in costs. Plaintiff also seeks an increase in the amount of attorney's fees awarded due to the fact that the case was taken on a contingency basis. However, the exhibit attached to the affidavit for additional fees and costs shows a total balance of $56,079.78 for fees and costs on the case, and the court will use this lower number as the starting point for the analysis of fees and costs.

 The amount of reasonable attorney's fees is generally equivalent to the "lodestar amount," that is, the number of hours reasonably expended multiplied by a reasonable hourly rate. *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1259 (2d Cir.1987). "However, where claims are separable, and one or more are found to be without merit, the district court should decline to award that portion of the requested fees which relate[s] to the unsuccessful claim." *McCann v. Coughlin*, 698 F.2d 112, 130 (2d Cir.1983). If separability is found, the amount of attorney's fees awarded "should be reduced by calculating the actual number of hours spent pursuing the unsuccessful claims." *Id.* at 130 n. 18. However, before doing so, the court must examine the degree to which the nonmeritorious claims are separable from the meritorious. *Id.* at 129–30. As the Supreme Court has noted:

It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained

by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).

This case clearly involves a core of facts and related legal theories common to all the claims advanced. Other courts have reached the same conclusion in similar cases. *See, e.g., Dominic*, 822 F.2d at 1259–60 (finding an age discrimination claim and retaliatory discharge claim were inextricably intertwined in an ADEA case, and thus, holding that the district court had properly awarded full attorney's fees despite the lack of success on the age discrimination claim). The court finds the case cited by defendant on this issue, *Webster v. Mohawk Valley Community College*, 1992 WL 209539 (N.D.N.Y. Apr. 3, 1992), distinguishable from the case at hand. In *Webster*, the court determined that the plaintiff could only receive attorney's fees for her successful retaliation claims. *Id.* at *12. However, in that case, each of the retaliation claims was factually separable and the unsuccessful wage discrimination claim was both legally and factually separable.

Defendant asserts that keeping in line with the *Hensley* decision, examining the degree of success achieved by the plaintiff requires the court to lower the requested attorney's fees award. Defendant claims that since plaintiff's complaint sought over $2 million in damages, but she ultimately received only $65,000 for backpay and emotional distress, and since her hostile work environment and sex discrimination claims were voluntarily discontinued, plaintiff has achieved a low degree of success which warrants lowered attorney's fees. Defendant cites no precedent for calculating the degree of success in this manner, and the *Hensley* case does not support such a formulation. In fact, the Supreme Court noted in *Hensley* that it is not necessarily significant that a prevailing plaintiff did not receive all the relief requested and an award of attorney's fees based on all hours reasonably expended may be granted so long as the relief obtained justified such expenditures of the attorney's time. *Hensley*, 461 U.S. at 435–36 n. 11, 103 S.Ct. at 1940–41 n. 11. Thus, the court rejects this assertion.

■ Defendant also asserts that since plaintiff's claim arose before passage of the 1991 Civil Rights Act, plaintiff's emotional damages were only compensable under New York law which specifically prohibits an award of attorney's fees. *Kump v. Xyvision, Inc.*, 733 F.Supp. 554, 562 (E.D.N.Y.1990). However, the court finds that the emotional damages claims were inextricably intertwined with the rest of the claims, and so, cannot find a valid way to separate the time and costs associated with these claims.

■ Additionally, as defendant correctly notes, plaintiff's attorney is not entitled to compensation for time expended in preparing a motion for attorney's fees because such time is expended for the benefit of the attorney rather than the client. *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1102 (2d Cir.1977); *Visser v. Magnarelli*, 542 F.Supp. 1331 (N.D.N.Y.1982). Thus, fees attributable to this motion are denied. After examining the exhibits submitted by plaintiff, it appears that approximately 9.5 hours were spent in preparing the attorney's fees motion.[1] Since the documentation shows that all work was done by Ronald Dunn, the court has assessed these hours at the rate applicable to partners. Accordingly, the attorney's fees are reduced by $1662.50.

■ Additionally, the defendant asserts that plaintiff should not receive an enhancement of the attorney's fee award due to the fact that the case was taken on a contingency basis. The Supreme Court has found this practice to be impermissible in relation to the fee-shifting provisions of other federal statutes, and the court finds the reasoning relied upon by the Supreme Court to be a persuasive reason to deny a contingency enhancement in this case. *See City of Burlington v. Dague*, 505 U.S. 557, 561–65, 112 S.Ct. 2638, 2641–43, 120 L.Ed.2d 449 (1992) (finding contingency enhancements impermissible under the Clean Water Act and Solid Waste Disposal Act). Thus, the court will not provide a contingency enhancement in this action. The court therefore awards $54,417.28 in attorney's fees and costs.

### D. Postjudgment Interest

■ Plaintiff also seeks postjudgment interest at the New York rate of 9% per annum from the date of the backpay verdict, September 15, 1994. However, postjudgment interest is just that, interest that accrues from the date of the entry of judgment. 28 U.S.C. § 1961(a); *Andrulonis v. United States*, 26 F.3d 1224, 1232, 1233 (2d Cir.1994). In this case, no judgment has been entered and will not be until after the filing of this order. The court, therefore, grants postjudgment interest from the date of entry of the judgment until such time as the defendant pays the award owed to plaintiff. Furthermore, postjudgment interest is calculated at the rate provided in 28 U.S.C. § 1961(a) rather than the 9% rate sought by plaintiff. Accordingly, the court grants plaintiff's motion for postjudgment interest pursuant to the dictates of 28 U.S.C. § 1961(a).

### III. CONCLUSION

In summary, the court denies defendant's Rule 50 motion and grants plaintiff's motion for front pay in the amount of $4038.46. The court awards attorney's fees and costs to plaintiff in the amount of $54,417.28. The court also awards postjudgment interest pursuant to 28 U.S.C. § 1961(a). The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

---

1. Since the motions for front pay and attorney's fees were combined, the court considered half of the hours listed as preparation of this combined motion as preparation of the attorney's fees motion.