EQUAL EMPLOYMENT OPPORTU-
NITY COMMISSION, Plaintiff-
Appellant–Cross–Appellee,

v.

PAPE LIFT, INC., d/b/a Hyster Sales
Company, Defendant–Appellee–
Cross–Appellant.

Nos. 94–35603, 94–35654.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 19, 1995.

Decided June 2, 1997.

---

James R. Neely, Jr., Gwendolyn Young Reams, Lorraine C. Davis, Jennifer S. Goldstein, Equal Employment Opportunity Commission, Washington, DC, for plaintiff-appellant-cross-appellee.

Dennis W. Percell, Linda J. Kessel, Arnold Gallagher Saydack, Percell & Roberts, Eugene, OR, for defendant-appellee-cross-appellant.

Before: WALLACE, D. W. NELSON and BRUNETTI, Circuit Judges.

D. W. NELSON, Circuit Judge.

Appellant Equal Employment Opportunity Commission ("EEOC") instituted this action against Appellee Pape Lift ("Pape"), alleging that Pape violated the Age Discrimination in Employment Act ("ADEA") when it discharged Bill Waters, a Pape employee. At the conclusion of the jury trial, the jury returned a verdict for the EEOC, finding that Pape terminated Waters because of his age, and awarding back pay and front pay. Moreover, because the jury found that the violations were willful, it awarded liquidated damages.

Pape then filed a motion for judgment as a matter of law and alternative motions for a new trial and remittitur. The district court granted the motions in part, eliminating the award of front pay and liquidated damages. The court also issued an order reducing the costs to be awarded to the EEOC. The

EEOC and Pape now appeal. We affirm in part, and reverse in part.

## BACKGROUND

Bill Waters was in his 24th year of employment with the Hyster Sales Company, a retail outlet for forklift trucks, when Pape purchased the company in August 1990. Waters worked as a general parts and service manager in one of the company's branch offices; his responsibilities included supervising the managers of the parts and service departments. After the purchase, Pape installed Dennis Brown as the new general manager to supervise Waters. In February 1991, Brown told Waters that the company would be eliminating the position of parts and service manager and gave him the option of managing either the parts or the service department. Waters chose the parts department.

Philip Hill, Waters' former supervisor who had been promoted to vice-president for marketing after the Pape purchase, testified that Brown had attempted to transfer Waters from Brown's department to a corporate position under Hill's supervision. Hill maintained that Brown said that "[Waters] was old and burnt out [and] that he was hurting the store image, meaning [Brown's] branch, because [he] did not fit the Pape mold of a young, aggressive type manager like they had in most other management positions." Hill also alleged that Brown told him that age was affecting Waters' memory and that Brown felt Waters was too old to change. When asked whether Brown had told him of any specific problems with Waters, Hill testified that he did not, but that "[h]e just kept saying, 'I don't think Bill fits the mold of the young, aggressive manager.'" Hill testified that since "[Waters] had done an excellent job for me for 20 years," he was "puzzled" by Brown's criticisms, and that he did not understand "why just with the flip of a switch [Waters was] so incompetent." Hill told Brown that he would not interview Waters for the available corporate position because he "viewed [that] job as a potential stepping stone" to his job, and Waters was close to retirement. In addition, the EEOC introduced evidence that Brown had made age-related comments about Waters on other occasions, at different times referring to him as an "old geezer" and "old fart."

Brown terminated Waters on August 7, 1991. He alleges that he came to that decision only as a result of attending the company's mid-year meeting, when he realized that Waters was "not going to change enough to meet the marketing goals of the company." A secretary in the parts department testified that after Waters left Pape, she heard Brown tell the company president "I finally forced Bill Waters out."

Waters then filed an age discrimination complaint with the EEOC. In response to the charge, Pape's personnel service manager, Lee Wood, sent a letter to the EEOC explaining the reasons for Waters' termination; the reasons she gave, however, were inconsistent with those provided by Brown.

After his termination, Waters checked the want ads for new work, but did not, according to the district court and Pape, actively look for work until July 1993. He sent out six letters with resumes and received a response from the manager of a lift truck company interested in hiring Waters as a parts manager. The job would have entailed "several hours waiting on customers" and paid about half of what Waters made at Pape; Waters testified that he "avoided the job." The record suggests that Waters made little effort to seek employment after the fall of 1993.

At trial, the EEOC introduced evidence that called into question both Brown's and Woods' explanations of Waters' termination. In addition, while Pape argued that Waters had failed to mitigate his damages, and presented evidence of available employment opportunities, the EEOC's employment expert challenged the suitability of those positions. The jury returned a verdict for Waters, and awarded back pay, front pay, and liquidated damages. The district court then partially granted Pape's motion for judgment as a matter of law, eliminating the front pay and liquidated damages awards, and reducing the costs to be awarded to the EEOC. Both parties now appeal.

680

## STANDARD OF REVIEW

■ A district court's decision to grant judgment as a matter of law is reviewed de novo. *Montiel v. City of Los Angeles,* 2 F.3d 335, 342 (9th Cir.1993). A district court's decision concerning a motion for a new trial is reviewed for an abuse of discretion. *Browning–Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 278, 109 S.Ct. 2909, 2921, 106 L.Ed.2d 219 (1989). Although the court's ruling on an alternative motion for a new trial involves the exercise of some discretion, "a stringent standard applies when the motion is based on insufficiency of the evidence." *Venegas v. Wagner,* 831 F.2d 1514, 1519 (9th Cir.1987). A motion will be granted on this ground only if the verdict "is against the 'great weight' of the evidence, or 'it is quite clear that the jury has reached a seriously erroneous result.'" *Id.* (quoting *Digidyne Corp. v. Data Gen. Corp.,* 734 F.2d 1336, 1347 (9th Cir.1984), *cert. denied,* 473 U.S. 908, 105 S.Ct. 3534, 87 L.Ed.2d 657 (1985)).

■ A district court's award of costs is reviewed for an abuse of discretion. *National Info. Servs., Inc. v. TRW, Inc.,* 51 F.3d 1470, 1471 (9th Cir.1995). Evidentiary rulings are reviewed for an abuse of discretion and should not be reversed absent some prejudice. *City of Long Beach v. Standard Oil Co.,* 46 F.3d 929, 936 (9th Cir.1995).

## DISCUSSION

### I. Willfulness of the ADEA Violation

In *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 617, 113 S.Ct. 1701, 1709, 123 L.Ed.2d 338 (1993), the Supreme Court held that a willful violation of the ADEA would be shown where the defendant "knew or showed reckless disregard" for the matter of whether its conduct was prohibited. In so holding, the Court recognized the continuing vitality of the definition of willfulness adopted in *TWA, Inc. v. Thurston,* 469 U.S. 111, 126–27, 105 S.Ct. 613, 623–24, 83 L.Ed.2d 523 (1985). *Thurston* held that this interpretation of willful was consistent with the meaning derived from other criminal and civil statutes. *Id.; see, e.g., United States v. Illinois Central R.R. Co.,* 303 U.S. 239, 242–43, 58 S.Ct. 533, 534–35, 82 L.Ed. 773 (1938) (holding that "willfulness" is to be defined as a disregard for the governing statute and an indifference to its requirements).

■ Pape argues that there has been no showing of willfulness in this matter, claiming that there is no proof that Brown's comments were uttered in the context of the decision to terminate Waters. Moreover, Pape contends that even if they were, those comments neither prove that Brown was aware of the ADEA nor support an inference that he knew of the potential applicability of the Act.

However, Pape's claims of ignorance are belied by the evidence in this case. After Brown terminated Waters, both he and Pape's personnel director, Lee Wood, appear to have made attempts to conceal evidence of any wrongdoing by offering pretextual reasons for the termination. Not only did they put forward two different sets of reasons for Waters' termination, but the EEOC presented evidence that called into question the veracity of both explanations. The jury was entitled to credit the EEOC's evidence, which supported a conclusion that the discrepant (and perhaps, incredible) responses proffered by Brown and Wood were unsuccessful attempts to mask a statutory violation. Indeed, this apparent subterfuge certainly suggests that both Brown and Wood were aware of Pape's potential liability for Waters' termination.

Moreover, in *Cassino v. Reichhold Chems., Inc.,* 817 F.2d 1338, 1348 (9th Cir.1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988), we held that "[w]illfulness may be shown by circumstantial evidence, including statistical evidence and discriminatory statements." The district court in this matter attempted to distinguish *Cassino* by suggesting that in that case "there was evidence, in addition to age-related comments, from which an inference of knowledge or reckless disregard could be drawn." The *Cassino* holding, however, was not premised on the notion that discriminatory statements *must* be accompanied by other circumstantial evidence in order to support a finding of willfulness. Rather, we merely looked to whether the jury's finding of willfulness was

supported by substantial evidence. *Id.* Like the discriminatory statements at issue in *Cassino,* the age-related comments in this matter not only were uttered by a decision-maker, but also were made in the context of an attempt to displace Waters from his current job. A reasonable juror could conclude that Brown's statements to Hill demonstrated clearly that Brown considered Waters unfit for his current position because of his age, and that he attempted to facilitate his removal from his position on that basis.

It should be pointed out, however, that in holding that circumstantial evidence may be used to prove willfulness, the *Cassino* court cited *Kelly v. American Standard,* 640 F.2d 974, 981 (9th Cir.1981), where we held that willfulness was to be gauged by a "knowing and voluntary" standard, and that this voluntariness could be demonstrated by statistical evidence or discriminatory statements. The *Kelly* test did not require that the ADEA violator have "knowledge of implications under the Act"; nor did it require reckless disregard of the Act's provisions. *Kelly*'s knowing and voluntary standard was, of course, overruled by *Thurston.* Nonetheless, *Thurston* does not address the question of whether circumstantial evidence properly may play a role in establishing recklessness.

■ The factors that the Court identified as relevant to an analysis of willfulness in *Hazen Paper* and *Thurston* support the use of circumstantial evidence. *See Hazen Paper,* 507 U.S. at 616, 113 S.Ct. at 1709 ("If an employer incorrectly but in good faith and nonrecklessly believes that the statute permits a particular age-based decision, then liquidated damages should not be imposed."); *Thurston,* 469 U.S. at 129, 105 S.Ct. at 625 ("The record makes clear that TWA officials acted reasonably and in good faith in attempting to determine whether their plans would violate the ADEA."); *see also Baker v. Delta Air Lines, Inc.,* 6 F.3d 632, 644–45 (9th Cir.1993) (overturning the jury's finding of willfulness because Delta's reliance on legal advice as to compliance with the ADEA constituted good faith). Because the willful/nonwillful distinction rests on whether the action was undertaken in good faith, circumstantial evidence clearly is relevant to the jury's de-

termination. Indeed, the circumstantial evidence of bad faith in this case provides strong support for the jury's verdict that Pape's actions were in fact willful. *See EEOC v. Watergate at Landmark Condominium,* 24 F.3d 635, 641 (4th Cir.1994) (holding that "where age is shown to be an undisclosed factor motivating the employer, a willful finding is supported," and stating that the employee need not provide direct evidence of the employer's motivation) (citations omitted).

■ Moreover, the jury's verdict is not undermined simply because the same evidence supported its finding that Waters was terminated on the basis of age and its determination of willfulness. The degree of recklessness with which the ADEA violation was committed, and the underlying violation itself, may each be the subject of a separate and independent inquiry even when the same evidence is used. At least one court has held that the two-tiered scheme demands separate evidence: In *Dreyer v. Arco Chem. Co.,* 801 F.2d 651, 657 (3d Cir.1986), *cert. denied,* 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987), the Third Circuit concluded that because of the need to "seek a standard for willfulness that distinguishes between a violation, which is almost always intentional, and a willful violation," and to avoid basing an award of liquidated damages "on evidence that ... merely duplicate[s] that needed for the compensatory damages," plaintiffs would be required to introduce "additional evidence of outrageous conduct." *Id.* at 658.

This additional evidence test, however, was among a number of post-*Thurston* doctrines rejected in *Hazen Paper.* 507 U.S. at 617, 113 S.Ct. at 1709 ("Once a 'willful' violation has been shown, the employee need not additionally demonstrate that the employer's conduct was outrageous, or provide direct evidence of the employer's motivation, or prove that age was the predominant, rather than a determinative, factor in the employment decision.") Also singled out for criticism by the *Hazen Paper* Court was the test for willfulness advanced by the Eight Circuit in *Neufeld v. Searle Labs.,* 884 F.2d 335, 340 (8th Cir.1989). The *Neufeld* court held that "if there is direct evidence—more than just an

inference from say, an arguably pretextual justification—of age-based animus, the trier of fact may properly find willfulness." *Id.* The *Hazen Paper* Court's rejection of the *Neufeld* model suggests that willfulness may be demonstrated even when the evidence of the underlying violation is merely circumstantial. To conclude that this does not, by extension, authorize the use of circumstantial evidence to prove willfulness, one must posit a situation in which a plaintiff relies upon circumstantial evidence to prove the underlying violation, but is somehow able to avail herself of direct evidence to prove willfulness. We have great difficulty conceiving of such a case.

We would also point out that in rejecting the *Neufeld* test, and the other variations on the willfulness inquiry adopted by post-*Thurston* courts, the *Hazen Paper* Court emphasized that it was not the issue of whether the challenged conduct could fit neatly within the two-tiered model that was to control the inquiry into whether liquidated damages were appropriate: "We believe that [the concern of other circuits with preserving the two-tiered system of liability] is misplaced. The ADEA does not provide for liquidated damages 'where consistent with the principle of a two-tiered liability scheme.' It provides for liquidated damages where the violation was 'willful.'" 507 U.S. at 616, 113 S.Ct. at 1710. *See also Brown v. Stites Concrete, Inc.,* 994 F.2d 553, 560 (8th Cir.1993) (en banc) ("The Supreme Court has clarified that the concern for ensuring a two-tiered liability scheme is 'misplaced' and that the focus should strictly be on whether the employer's actions were in willful violation of the ADEA as provided in the statute."). Indeed, while the analysis of whether discriminatory conduct was willful may be aided significantly by reliance upon the two-tiered scheme, compliance with that scheme should not be the *starting point for* making the willfulness determination: "The two-tiered liability principle was simply one interpretative tool among several that we used in *Thurston* to decide what Congress meant by the word 'willful,' and in any event we continue to believe that the 'knowledge or reckless disregard' standard will create two tiers of liability across the range of ADEA cases." *Hazen Paper,* 507 U.S. at 616, 113

S.Ct. at 1710. Accordingly, it is not the degree of resemblance to the two-tiered model which is to serve as the first step in making the willfulness determination; rather, it is the question of recklessness—the resolution of which necessarily will give rise to a two-tiered inquiry—which should control.

Thus, we think that allowing plaintiffs to make a showing of willfulness using the same evidence that was used to establish the underlying ADEA violation will not eliminate the vitality of the two-tiered scheme, as the evidence in question would be put toward two different ends. The first point of inquiry would be whether or not the evidence at issue served to prove that the challenged action was taken for impermissible, age-related reasons, while the second would look to whether that evidence demonstrated that "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Hazen Paper,* 507 U.S. at 614, 113 S.Ct. at 1708. In many cases, the evidence may prove an impermissible age-related decision, but may not be indicative of willfulness. In this case, the jury found that the EEOC prevailed on both prongs.

We hold that there was sufficient evidence of willfulness to support the jury's verdict, and we reverse the district court's partial grant of judgment as a matter of law in favor of Pape and its conditional grant of a new trial.

II. *The Front Pay Award*

■ The district court held that since Waters discontinued his employment search after the fall of 1993, he made no effort to mitigate his damages and thus would not be entitled to a front pay award. The court apparently concluded that since Pape's evidence of suitable employment covered the fall of 1993 and the time immediately preceding trial, Pape had demonstrated that suitable employment would be available from the time of trial to late December 1995.

■ The EEOC contends, however, that the jury reasonably could have concluded that suitable employment was not available

to Waters. Pape's expert testified that he reviewed positions available from 1991 until the time of trial in the customer service management, parts management, warehouse management, and sales management areas; the EEOC put forward evidence, however, that those jobs that were similar in kind to Waters' former position had salaries lower than that of his old job. In addition, the EEOC argued that some of the jobs listed by Pape's expert, which included positions as a news director, animal health manager, sound effects manager, and music librarian, were substantially dissimilar to Waters' previous employment. In *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982), the Supreme Court held that "an unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position." A plaintiff need only pursue "substantially equivalent" work. *Id.* at 232, 102 S.Ct. at 3066. Pape's argument may essentially be reduced to the proposition that an individual should consider working as an animal health manager or music librarian after he has been illegally discharged from his position as a parts manager in a forklift truck operation, or alternatively, that he should accept a position similar to the one he held previously, but which offers a significantly lower salary. These arguments are simply untenable, and we reject them. The jury's finding that Pape did not satisfy its burden of demonstrating that suitable work was available to Waters is thus well-supported by the evidence.

■ We also reject Pape's argument that after a period of looking for work unsuccessfully, Waters was obligated to "lower his sights" in order to procure employment. *See id* at 232 n. 16, 102 S.Ct. at 3066 n. 16 (noting, without adopting the principle, that some lower courts have indicated that "after an extended period of time searching for work without success, a claimant must consider taking a lower-paying position"). Pape has waived this argument because it never requested an instruction on the so-called "lowered sights" doctrine; the jury was instructed only that Waters must seek a job of "like kind, status and pay," and it reasonably concluded that no such job was available.

Accordingly, we reverse the district court's judgment for Pape and its conditional grant of a new trial on the front pay issue.

### III. *Deposition Costs*

■ The EEOC contends that the district court abused its discretion in disallowing deposition costs for certain defense witnesses not called at trial, arguing that introducing a deposition at trial is not a prerequisite for determining its necessity. *Murphy v. City of Flagler Beach*, 761 F.2d 622, 631 (11th Cir. 1985). When considering whether particular costs are necessary, however, this court has often relied on the trial court's "intimate familiarity" with the proceedings as a basis for making the determination. *Smith v. Hughes Aircraft Co.*, 22 F.3d 1432, 1439 (9th Cir.1993). The district court, in addition to noting that the deposed witnesses were not called at trial, found that the depositions themselves were unnecessary. Because of the district court's familiarity with the proceedings, we cannot say that the court abused its discretion in denying these deposition costs.

### THE CROSS–APPEAL

### I. *Evidence of Discrimination*

■ In its cross-appeal, Pape argues that Brown's age-related remarks were not direct evidence of discrimination, but were only "stray remarks." The company contends that Brown came to the decision to fire Waters only on August 7, 1991, and that any discriminatory remarks he made prior to that time were not tied to the decision to terminate Waters. However, we think a jury reasonably could have concluded that Brown's attempts to transfer Waters from the parts department, based on the notion that Waters was too old to continue in that department, were evidence of his desire to remove Waters from his job because of Waters' age and were tied to his eventual decision to terminate Waters. This proposition finds significant support in the fact that it was after Brown learned that a transfer would not be possible that he made the decision to terminate Waters' employment.

The statements in this case can thus be distinguished from what this court has previously viewed as stray remarks. In *Nesbit v. Pepsico,* 994 F.2d 703 (9th Cir.1993), we held that where the defendant had instituted a general reduction in its workforce, age-related comments that were "uttered in an ambivalent manner and ... not tied directly to [the plaintiff's termination]" were not direct evidence of discrimination. *Id.* at 705. Similarly, in *Merrick v. Farmers Ins. Group,* 892 F.2d 1434 (9th Cir.1990), we held that evidence that the defendant referred to the individual he chose to promote as "a bright, intelligent, knowledgeable young man" was not evidence that the defendant refused to promote the plaintiff because of his age. *Id.* at 1438. By contrast, the age-related comments in this matter were tied to the decision to remove Waters from his position and served as evidence of the fact that Brown discharged Waters because of his age. *See, e.g., Armbruster v. Unisys Corp.,* 32 F.3d 768, 778 (3d Cir.1994) (holding that evidence required to come within the *Price Waterhouse* framework must directly reflect a discriminatory or retaliatory animus on the part of the person involved in the decisionmaking process); *see also Schnidrig v. Columbia Mach., Inc.,* 80 F.3d 1406, 1411 (9th Cir.) (holding that employee created genuine issue of material fact as to whether employment decision was made for age-related reasons when he alleged he was told on three separate occasions that employer wanted someone younger for the job), *cert. denied,* —— U.S. ——, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996). Pape would have this court hold that discriminatory remarks are tied to the decisional process only if a decisionmaker said something to the effect of "I'm firing you because you are too old." Few employers who engage in illegal discrimination, however, express their discriminatory tendencies in such a direct fashion; indeed, we think that even those employers who claim to be ignorant of this nation's long struggle against various forms of employment bias would find a more subtle approach.

## II. *The Backpay Award*

Pape alleges that the district court erred in holding that it only produced evidence of suitable employment for the time immediately preceding trial, as its expert testified that he looked for suitable employment that could have been available since 1991. Because the EEOC presented evidence that a number of the positions listed by Pape's expert may have been unsuitable for Waters, however, the jury reasonably could have held that Pape failed to demonstrate adequately that suitable employment was available.

 Pape further contends that a good deal of Waters' efforts to seek employment consisted merely of looking at want ads, and that these efforts are insufficient to show reasonable mitigation efforts. Of those cases Pape cites, however, none of them suggest that only looking at want ads is in all cases unreasonable; rather, they instead appear to base a determination of reasonableness on the particular circumstances and characteristics of the plaintiffs. *EEOC v. Service News Co.,* 898 F.2d 958, 963 (4th Cir.1990) (holding that where plaintiff was an 18–year old unskilled employee, merely looking through want ads for unskilled positions is insufficient); *Logan v. Pena,* 61 FEP Cases 564, 567, 1993 WL 62316 (D.Kan.1993) (finding insufficient evidence of mitigation where plaintiff occasionally read want ads and testified he only did it from boredom); *Hanna v. American Motors Corp.,* 724 F.2d 1300, 1307 (7th Cir.) (holding that reasonable diligence includes checking want ads), *cert. denied,* 467 U.S. 1241, 104 S.Ct. 3512, 82 L.Ed.2d 821 (1984). In addition, in *Reilly v. Cisneros,* 835 F.Supp. 96, 100 (W.D.N.Y.1993), *aff'd,* 44 F.3d 140 (2d Cir.1995), where the court stated that "a plaintiff cannot merely look through want ads," it also held that "[t]he reasonableness of a plaintiff's search for comparable employment must be assessed in light of the circumstances of the individual case." Thus, we reject Pape's contention that Waters' efforts to seek employment were necessarily unreasonable; rather, we think it more appropriate to tailor the reasonableness inquiry to the particular characteristics of the injured plaintiff.

 Pape also argues that Waters' embarrassment in being terminated does not excuse him from making reasonable efforts

to find suitable employment. Pape, however, mischaracterizes the EEOC's argument; the EEOC does not maintain that Waters' embarrassment about being terminated relieved him from the duty to seek suitable work, but merely argues that the reasonableness of his efforts should again be viewed in light of his "individual characteristics." *Rasimas v. Michigan Dep't of Health,* 714 F.2d 614, 624 (6th Cir.1983), *cert. denied,* 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). The EEOC presented evidence that Waters' lack of aggressiveness in pursuing new work is common among older workers who are fired from long-term positions, and there is little question that this evidence was relevant to the reasonableness of Waters' efforts. As is noted above, courts have consistently based a determination of whether a plaintiff's efforts to procure suitable work were reasonable on that individual's particular circumstances and characteristics. Accordingly, the evidence about Waters' mental condition following his discharge was sufficient to support the jury's conclusion that his mitigation efforts were reasonable.

## III. *Emotional Distress*

 Finally, Pape argues that the district court erred in admitting evidence of Waters' emotional distress, asserting that such evidence is irrelevant and prejudicial. However, because the reasonableness of a plaintiff's mitigation efforts is to be viewed in light of the claimant's particular circumstances, the analysis may often require the admission into evidence of facts that may, as Pape argues, "influence the jury with sympathy for the plaintiff." This is certainly true of at least one case Pape cites in support of its argument that Waters did not mitigate damages. *See Reilly,* 835 F.Supp. at 100–01 (discussing plaintiff's efforts to mitigate damages despite suffering from alcoholism and assisting woman he lived with during recovery from back surgery). While Pape contends that the *Reilly* court said "nothing about emotional distress," it does admit that the court there held the plaintiff's mitigation efforts to be "adequate *under the circumstances.*" *Id.* at 100 (emphasis added). Because the reasonableness of a plaintiff's mitigation efforts is to be evaluated in light of his individual circumstances, the court did not abuse its discretion in admitting evidence of Waters' emotional distress.

Accordingly, we reverse the district court's grant of judgment as a matter of law and its conditional grant of a new trial on the issue of willfulness and reinstate the award of liquidated damages. We also reinstate the front pay award and reverse the district court's conditional grant of a new trial on the issue of front pay. We affirm the district court's denial of deposition costs and its denial of judgment as a matter of law on the issues of evidence of discrimination and the backpay award.

AFFIRMED IN PART, REVERSED IN PART.